**Donald OGDEN, Plaintiff Below, Appellant,**

v.

**James V. GALLAGHER, M.D., Defendant Below, Appellee.**

Supreme Court of Delaware.

Submitted: Dec. 13, 1990.
Decided: April 10, 1991.
Reargument Denied: May 3, 1991.\*

\* The opinion dated April 10, 1991, in this matter, is withdrawn. This opinion is substituted in its place.

Michael D. Carr (argued), Barbara J. Gadbois of Ament, Evans, Lynch & Carr, Wilmington, for appellant.

F. Alton Tybout of Tybout, Redfearn & Pell, Wilmington, for appellee.

Before CHRISTIE, C.J., HORSEY, MOORE, WALSH and HOLLAND, JJ. (constituting the Court *en banc*).

HOLLAND, Justice:

This appeal involves a medical malpractice action brought in the Superior Court by the plaintiff-appellant, Donald Ogden ("Ogden") against multiple defendants, including the defendant-appellee, James V. Gallagher, M.D. ("Dr. Gallagher"). Ogden filed his complaint on July 19, 1989. Dr. Gallagher subsequently submitted a motion for summary judgment on the basis that Ogden's complaint was time barred. According to Gallagher's motion, the two-year statute of limitations was applicable and began to run on Ogden's claim as of July 9, 1987. 18 *Del.C.* § 6856. The Superior Court granted Dr. Gallagher's motion for summary judgment.[1]

In this appeal, Ogden alleges that the Superior Court erred, as a matter of law, in

---

1. Upon Ogden's application, the Superior Court entered its judgment in favor of Dr. Gallagher as a final order, pursuant to Superior Court Civil Rule 54. Ogden filed his appeal on June 15, 1990.

granting Dr. Gallagher's motion for summary judgment. Ogden's first contention is that there was a dispute about issues of material fact concerning when the statute of limitations began to run, the resolution of which depended upon the applicable standard of care. Ogden's second contention is that the Superior Court erred in granting Dr. Gallagher's motion for summary judgment because Dr. Gallagher did not present sworn expert evidence of the applicable standard of care and that his conduct conformed to that standard.

We have carefully reviewed the record in this case. We have concluded that the two issues raised by Ogden are interrelated and are both meritorious. Therefore, the decision of the Superior Court, which granted Dr. Gallagher's motion for summary judgment, is reversed.

### Facts

Ogden was originally treated by Dr. Gallagher almost three years before the complaint alleging medical negligence was filed. On July 17, 1986, Ogden was injured in an accident while riding a three-wheeled recreational vehicle. He was transported by ambulance to the emergency room of Kent General Hospital. There, Ogden was examined by Dr. Gallagher, an orthopedist who was on call at the hospital.

Dr. Gallagher concluded that Ogden had sustained a fracture of his lower left leg. Dr. Gallagher performed an "open reduction and internal fixation of the comminuted fracture." This procedure is described as an operation to correct the fracture by bringing the broken parts back into their normal positions and securing them with steel plates and screws.

2. In his deposition, Dr. Gallagher stated that there is an x-ray machine in his office in Smyrna operated by a technician who is employed by Kent General Hospital. Once Dr. Gallagher examined the x-rays taken at the office, the technician would return them to the hospital, where a radiologist from the hospital's radiology department would also read the x-rays and then dictate a report of the findings. Such a report is usually not typed until the day after it is dictated. It is then sent to the doctor who ordered the x-rays.

Following the operation and his discharge from the hospital on July 22, 1986, Ogden continued to see Dr. Gallagher at regular intervals. Dr. Gallagher's initial post-operative comments reflect that he thought Ogden's left leg was healing well. By November 5, 1986, Dr. Gallagher believed that it had healed completely. However, some time during December 1986, Ogden began experiencing pain and swelling in his left leg.

In January 1987, Ogden was still experiencing pain and it was apparent that his left leg had not healed properly. Dr. Gallagher recommended that Ogden have a second operation to remove bone spurs from the area of the fracture site. However, prior to performing that operation, Dr. Gallagher referred Ogden to Michael L. Mattern, M.D. ("Dr. Mattern") for a second opinion. Dr. Mattern concurred with Dr. Gallagher's diagnosis and recommendation for a second operation.

Dr. Gallagher performed a second operation on Ogden's left leg on March 3, 1987. Following the second operation, according to Dr. Gallagher's office notes, Ogden continued to suffer pain and swelling in the leg. On July 8, 1987, Ogden's left leg was x-rayed at Dr. Gallagher's request.[2]

Dr. Gallagher recommended a third operation to Ogden during an office visit on July 9, 1987. The purpose of the third operation was to move the steel plate from one side of Ogden's left leg to the other. Dr. Gallagher again advised Ogden to obtain a second opinion, prior to having the third operation. However, he did not refer Ogden to a specific medical doctor. Ogden arranged a consultation with another orthopedist, Christopher D. Casscells, M.D. ("Dr. Casscells"). One of Ogden's friends had

Dr. Gallagher's notes of the July 9, 1987 office visit with Ogden reflect that a "washed-out area" appeared on the July 8, 1987 x-ray. Dr. Gallagher did not have the radiologist's report when he examined Ogden on July 9, 1987. However, according to Dr. Gallagher, most orthopedists will treat patients while the report is not available because the orthopedists also consider other factors not considered by the radiologists, who do not physically examine the patients.

recommended Dr. Casscells to him. Ogden scheduled an appointment with Dr. Casscells for July 28, 1987.

On July 15, 1987, Ogden returned to Dr. Gallagher's office to obtain his medical records prior to the appointment with Dr. Casscells. Ogden informed Dr. Gallagher of his appointment with Dr. Casscells for July 28, 1987. Ogden was apparently given all of his x-rays. However, Ogden did not obtain a copy of his other medical records because that one of Dr. Gallagher's offices did not have a photocopier. Due to what Dr. Gallagher characterized as an "oversight", Ogden's other medical records were not forwarded to Dr. Casscells prior to his initial examination of Ogden.

When Ogden met with Dr. Casscells on July 28, 1987, Dr. Casscells concurred with Dr. Gallagher's diagnosis and recommendation for a third operation. Dr. Casscells suggested that Ogden return to Dr. Gallagher for that surgery. However, Ogden preferred to have Dr. Casscells perform the third operation.

On July 28, 1987, Dr. Casscells sent a letter to Dr. Gallagher. It explained his concurrence with Dr. Gallagher's diagnosis, as well as Ogden's desire to have Dr. Casscells perform the third operation. Dr. Casscells' letter thanked Dr. Gallagher for the complete x-rays he had received and requested the rest of Ogden's medical records.

On July 31, 1987, Dr. Gallagher sent Ogden's medical records to Dr. Casscells. However, that transmittal did not include the radiologist's report concerning Ogden's July 8, 1987 x-rays.[3] This report, dictated July 13, 1987, and typed July 14, 1987, was prepared by Robert O. France, M.D. ("Dr. France"). It indicated that Dr. France believed the x-ray showed the presence of osteomyelitis with overlying cellulitis at the fracture site, i.e., an inflammatory infection of the bone and an inflammation of the connective tissue.

On August 10, 1987, Dr. Casscells performed the third surgery on Ogden's left leg. Following the surgery, Ogden was advised by Dean L. Winslow, M.D., an infectious disease specialist, that he was suffering from pseudonomonas and osteomyelitis, an infection usually associated with surgery. Ogden's complaint attributes that infection to what he alleges was the prior course of negligent medical treatment, including the two operations, by Dr. Gallagher.

### Applicable Statute of Limitations

The applicable statute of limitations, in actions alleging medical malpractice, is 18 *Del.C.* § 6856. The pertinent part of that statute provides:

> No action for the recovery of damages upon a claim against a health care provider for personal injury, including personal injury which results in death, arising out of malpractice shall be brought after the expiration of 2 years from the date upon which such injury occurred; provided, however, that:
>
> (1) Solely in the event of personal injury the occurrence of which, during such period of 2 years, was unknown to and could not in the exercise of reasonable diligence have been discovered by the injured person, such action may be brought prior to the expiration of 3 years from the date upon which such injury occurred, and not thereafter; . . . .

Pursuant to this statute, there are two limitation periods. One is a period of two years, applicable to injuries discovered at the time of the wrongful act. The other is a period of three years applicable, to "inherently unknowable injuries." *See Benge v. Davis,* Del.Supr., 553 A.2d 1180, 1182 (1989) (citing *Ewing v. Beck,* Del.Supr., 520 A.2d 653, 659 (1987)).[4]

---

**3.** Dr. Gallagher indicated that he never saw Dr. France's report until after this lawsuit was filed, and that while his initials on his copy of the report serve as acknowledgement that he had read it, he was not sure of the date on which he had initialed the report.

**4.** The case law and legislative history of Section 6856 was reviewed in *Ewing v. Beck,* Del.Supr., 520 A.2d 653 (1987).

Both Ogden and Dr. Gallagher agree that the two-year statute of limitations is controlling in this case. Thus, Ogden was required to file his action against Dr. Gallagher within two "years from the date upon which such injury occurred." 18 *Del.C.* § 6856. For purposes of Section 6856, "the date upon which such injury occurred" is the date of the alleged wrongful act or omission. *Reyes v. Kent General Hosp., Inc.*, Del.Supr., 487 A.2d 1142, 1145 (1984). Consequently, a determination must be made as to when the wrongful act or omission occurred, such that the statutory period of limitations began to run. *Benge v. Davis*, 553 A.2d at 1183.

### Continuous Negligent Medical Treatment

■ Ogden contends that his second amended complaint alleged a specific course of continuous negligent medical treatment. Delaware recognizes continuous negligent medical treatment as a valid basis for a medical malpractice action. *See Ewing v. Beck*, 520 A.2d at 661. Under this doctrine, the plaintiff has but one cause of action, for continuous negligent medical treatment, when "there is a continuum of negligent medical care related to a *single condition* occasioned by negligence." *Id.* at 662 (emphasis in original). Thus, a complaint brought under the continuous negligent medical treatment theory of recovery must allege with particularity a continuous course of negligent medical treatment over a finite period of time. *Ewing v. Beck*, 520 A.2d at 664. The facts in the record must then establish that the treatment rendered was "inexorably related so as to constitute one continuing wrong." *Id.*

■ Once a claim for continuous negligent medical treatment has been properly alleged, it must be determined from exactly what point in time the statute of limitations began to run. *Benge v. Davis*, 553 A.2d at 1183. In applying the statutory language of Section 6856 in the context of a claim for continuous negligent medical treatment, this Court has held:

the "date upon which such injury occurred" is the last act in the negligent medical continuum. Therefore, if a plaintiff has a cause of action for continuous negligent medical treatment and that fact becomes known within two years of an act in the alleged negligent continuum, the *statute of limitations begins to run for two years from the last act in the negligent continuum prior to the point in time when the plaintiff has actual knowledge of the negligent course of treatment* or in the exercise of reasonable diligence could have discovered the negligent course of treatment.

*Benge v. Davis*, 553 A.2d at 1183 (citing *Ewing v. Beck*, 520 A.2d at 663) (emphasis in original).

Viewing the facts in light most favorable to Ogden, the non-moving party, the Superior Court assumed, *arguendo*, that a continuous course of negligent medical treatment during a finite period was alleged with particularity in Ogden's second amended complaint. *See Ewing v. Beck*, 520 A.2d at 664. Thereafter, the *Ewing* rule required the Superior Court to answer a two-part inquiry: "(1) what is the date upon which [Ogden] had actual or constructive knowledge of the negligent course of treatment and; (2) what is the date of the 'last act' in the negligent continuum immediately prior to the date that [Ogden] received knowledge, actual or constructive, of the negligent course of treatment." *Benge v. Davis*, 553 A.2d at 1184.

### Knowledge of Negligent Treatment Continuum

■ The first question which had to be resolved in the case *sub judice* was the date of Ogden's actual *or* constructive knowledge of the alleged negligent course of treatment by Dr. Gallagher. In answering part one of the *Ewing* inquiry, an objective test is employed, i.e., the reasonably prudent person standard. *Ewing v. Beck*, 520 A.2d at 664. In addition, in determining the date of knowledge, a presumption operates that "a patient who actually consults with an independent health care provider about the same condition which is subsequently the subject matter of an al-

leged negligent medical continuum knew or in the exercise of reasonable diligence could have known about the prior negligent course of conduct, on [the] date of the consultation with the independent health care provider." *Id.*

■ The parties agree that Ogden consulted with Dr. Casscells on July 28, 1987, about the same condition he was being treated for by Dr. Gallagher. The parties also agree that Ogden decided to obtain a second opinion from Dr. Casscells, after he was recommended to Dr. Casscells by a friend. Nevertheless, Ogden argues that Dr. Casscells was not an independent health care provider because Dr. Gallagher had advised him to obtain a second opinion. We find that argument by Ogden is without merit. The fact the one health care provider recommends that a second opinion be obtained, even if a particular unaffiliated [5] health care provider is suggested, does not *ipso facto* vitiate what would otherwise be the second health care provider's independent status.

The undisputed record in this case reflects that Dr. Casscells was an independent health care provider, who was consulted by Ogden concerning the same condition which he subsequently alleged had been the subject of a continuum of negligent medical treatment by Dr. Gallagher. Accordingly, Delaware law presumes that when Ogden consulted with Dr. Casscells on July 28, 1987, Ogden knew or in the exercise of reasonable diligence could have discovered the alleged prior course of negligent medical treatment by Dr. Gallagher. *See Ewing v. Beck*, 520 A.2d at 664. Consequently, the two year statute of limitations began to run on Ogden's claim from the last act in the alleged negligent continuum of medical treatment by Dr. Gallagher prior to July 28, 1987.

**5.** In *Ewing*, this Court noted that an individual health care provider will not be deemed independent if he or she is in a medical group or clinic with the same health care provider who is alleged to have engaged in a continuous course of negligent medical treatment. *Ewing v. Beck*, 520 A.2d at 664 n. 14.

### Last Act of Negligent Treatment Continuum

The second question which had to be resolved in the case *sub judice*, part two of the *Ewing* inquiry, was the date of the "last act" in the alleged negligent continuum of treatment by Dr. Gallagher, prior to Dr. Casscells' office visit with Ogden on July 28, 1987. An answer to that inquiry also calls for an objective analysis. *Benge v. Davis*, 553 A.2d at 1184. The "last act" which commences the running of the statutory period of limitations, in a claim based upon continuous negligent medical treatment, must be an affirmative happening or event. *Id.* at 1185. However, an act of omission can be a valid basis for plaintiff's medical malpractice claim, if that act of omission occurs "within the context of an affirmative happening or event." *Benge v. Davis*, 553 A.2d at 1185 n. 6.[6]

■ A determination of what act or omission in this case properly answers the second inquiry required by the *Ewing* rule, involves the application of two important precepts. First, the act or omission must be a form of medical treatment and not a ministerial function. Second, the act or omission, which is the focus for statute of limitations purposes under the doctrine of continuous negligent medical treatment, is limited to the last act of treatment in the alleged negligent continuum, not the last act of any treatment. *Ewing v. Beck*, 520 A.2d at 663. *Accord Benge v. Davis*, 553 A.2d at 1183.

Ogden contends that Dr. Gallagher's recommendation to obtain a second opinion constituted an affirmative act which was a part of the continuum of negligent medical treatment. According to Ogden, once that recommendation was made, Dr. Gallagher had an obligation to forward all of Ogden's medical records to the health care provider

**6.** In construing Section 6856, this Court has noted that "[t]he report to the Governor of the Delaware Medical Malpractice Commission which drafted the statute clearly indicates that the phrase 'injury occurred' means the time at which the wrongful act or *omission* occurred." *Dunn v. St. Francis Hosp., Inc.*, Del.Supr., 401 A.2d 77, 79 (1979) (emphasis added).

selected by Ogden for that purpose. Consequently, Ogden characterizes Dr. Gallagher's failure to forward the medical records to Dr. Casscells as a continuing act of omission, which occurred within the context of the affirmative act of recommending that Ogden receive a second opinion. Ogden contends that Dr. Gallagher's failure to forward the medical records to Dr. Casscells, especially Dr. France's radiology report, constituted the "last act" in the alleged continuum of negligent medical treatment.

The statute of limitations began to run on Ogden's claim on the date of the last act of medical treatment in the negligent continuum *preceding* a consultation with an independent health care provider. If Ogden is correct and Dr. Gallagher's failure to send Ogden's medical records was such an act, as an omission, it continued until July 28, 1987 when Ogden met with Dr. Casscells. Thus, the statute of limitations began to run on that date. Consequently, the complaint which Ogden filed on July 19, 1989 would not be barred by the two-year statute of limitations.

Dr. Gallagher contends that he was not involved with any medical care or treatment of Ogden after July 9, 1987 and before July 28, 1987. According to Dr. Gallagher, any contact he had with Ogden on July 15, 1987 was solely for the "essentially clerical function of getting records moved from one place to another." Dr. Gallagher submits that if there were any "flaws" in the "administrative details" of forwarding Ogden's medical records after July 15, 1987, "such flaws" had nothing to do with Ogden's treatment. Alternatively, Dr. Gallagher asserts that, assuming *arguendo*, there was any medical negligence in the delay of forwarding Ogden's records to Dr. Casscells, such negligence would not be part of what was alleged to be the continuum of the negligent treatment of Ogden's left leg.[7]

The Superior Court found that Dr. Gallagher's recommendation to Ogden to obtain a second opinion was not a part of the alleged continuum of negligent medical treatment. The Superior Court found that the purpose of having Ogden obtain a second opinion was not to assist Dr. Gallagher in his treatment of Ogden, but instead was to permit Ogden to determine whether to pursue the surgery which Dr. Gallagher had recommended. The Superior Court also found that any delay in the "mechanical forwarding of records" by Dr. Gallagher was unrelated to the treatment of Ogden's condition. Consequently, the Superior Court held that Dr. Gallagher's last act in the alleged negligent continuum was his office visit with Ogden on July 9, 1987.

### Proof of Standard Required

■ The appellate standard of review, following the grant of a motion for summary judgment, requires an examination of the record to determine whether under all of the circumstances, viewing the facts in a light most favorable to the non-moving party, the moving party has established that there are no material issues of fact and that judgment should be entered on the motion as a matter of law. *Benge v. Davis*, 553 A.2d at 1182 (citing *Cole v. Delaware League for Planned Parenthood, Inc.*, Del.Supr., 530 A.2d 1119, 1124 (1987)). The facts in the record are not in dispute. However, the attorneys for Ogden and Dr. Gallagher disagree sharply about the legal implications which arise from those undisputed facts.

■ Ogden's attorney argues that the Superior Court erred as a matter of law in granting Dr. Gallagher's motion for summary judgment in the absence of any expert medical testimony to support Dr. Gallagher's position. Dr. Gallagher's attorney acknowledges that under some circumstances expert testimony might be needed to determine whether a certain act or omission was a part of a continuum of treatment. Moreover, Dr. Gallagher's attorney also acknowledges that a patient might make a case for the proposition that the failure to forward records to another doctor is in itself an act of medical negli-

---

7. According to Dr. Gallagher, it would be a separate item of negligence and Ogden's only timely claim would be limited to damages which flowed from that negligence.

gence. Nevertheless, Dr. Gallagher's attorney contends that Dr. Gallagher was not required to present expert testimony to support his motion because, in spite of the fact that the medical records "clearly did concern the condition for which Dr. Gallagher had previously treated Ogden," the act (omission) of forwarding (not forwarding) those records was not part of the negligent continuum of treatment.

In this case, the merits of Dr. Gallagher's motion for summary judgment, albeit based upon the statute of limitations, were completely dependent upon his own avowed compliance with the applicable standard of care and his attorney's legal arguments to that effect in the Superior Court. This Court has held that in a medical malpractice action:

> proper support for a defendant's motion requires proof that the defendant conformed to the requisite standards of care under the circumstances at issue. This, in turn, requires proof [from an expert witness] of the relevant medical standards followed by physicians in good standing in the community under like circumstances and a showing that the defendant's conduct was in conformity with those standards.

*Baylis v. Wilmington Medical Center, Inc.,* Del.Supr., 477 A.2d 1051, 1057 (1984) (citing *Coleman v. Garrison,* Del.Supr., 349 A.2d 8, 10 (1975); *Hurtt v. Goleburn,* Del.Supr., 330 A.2d 134, 135 (1974)). Accordingly, it was necessary for Dr. Gallagher to support his motion for summary judgment with expert medical testimony showing the relevant medical standards followed by physicians in good standing in the community under like circumstances, and that his conduct was in conformity with these standards. *See Baylis v. Wilmington Medical Center, Inc.,* 477 A.2d at 1057. In the absence of such proof, the Superior Court erred as a matter of law in granting Dr. Gallagher's motion for summary judgment.[8] *Id.*

8. Following the remand of this case, if Dr. Gallagher's motion for summary judgment is renewed and properly supported by affidavits,

*Conclusion*

The decision of the Superior Court granting Dr. Gallagher's motion for summary judgment is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

the burden will shift to Ogden. *Baylis v. Wilmington Medical Center, Inc.,* 477 A.2d at 1057 (citing Del.Super.Ct.Civ.R. 56(e)).