Harry **BISSELL, individually and as named personal representative of the Estate of Mary C. Bissell, Plaintiff,**

v.

**PAPASTAVROS' ASSOCIATES MEDICAL IMAGING, a general partnership, Defendant.**

Superior Court of Delaware,
New Castle County.

Submitted: Nov. 12, 1992.
Decided: Feb. 18, 1993.

Randall E. Robbins, and Richard D. Heins, of Ashby & Geddes, Wilmington, for plaintiff Harry B. Bissell, Jr.

Victor F. Battaglia, and Philip B. Bartoshesky, of Biggs and Battaglia, Wilmington, for defendant Papastavros' Associates Medical Imaging.

## OPINION

HERLIHY, Judge.

Presently before the Court are motions to dismiss and for summary judgment filed by Papastavros' Associates Medical Imaging [defendant], a general partnership.

Harry Bissell [plaintiff] is the husband of the late Mary C. Bissell [Bissell]. He brings suit individually and as her personal representative. In his original complaint, plaintiff alleged that defendant negligently failed to notify Bissell of the results of a 1989 test that revealed the presence of breast cancer.

Previously, this Court had granted plaintiff's motion to amend his complaint, which was done over defendant's objections. In sum, the amended complaint alleges that Bissell was the victim of continuous negligent treatment resulting from a series of three tests over several years. Primarily, he now alleges that the second test was misread, since cancer was then evident, and that it was misread again when the third test was taken. He realleges the failure to notify Bissell of the third test's results but now, as part of the claim of continuous negligent treatment.

Plaintiff attached a physician's affidavit to its motion to amend. Defendant indicates it has moved to strike the affidavit. As noted, defendant has moved for dismissal and/or summary judgment on the ground that the statute of limitations bars plaintiff's actions and that plaintiff's amended complaint does not relate back to the original complaint.

## FACTS

Bissell was born December 26, 1922. She began seeing an internist, Dr. William Taylor, in 1975, and saw him periodically thereafter for various matters. In the following fourteen years, Dr. Taylor ordered diverse diagnostic tests which were conducted by different diagnostic laboratories. One of these laboratories, defendant, performed mammograms on Bissell.

Dr. Taylor ordered the first mammogram in 1987 as part of a general physical examination. That report dated November 5, 1987, stated in part:

> Patient's name: Bissell, Mary C. Mrs.
> Doctor: Wm. Taylor
> **MAMMOGRAM:** Both breasts have been examined in multiple projections. No dominant nodule, cluster of microcalcifications or skin thickening is demonstrated. Both breasts do demonstrate moderate fibrocystic change.
> **IMPRESSION: BILATERAL FIBROCYSTIC CHANGE. MM:** dmo

Bissell did not have any office visits with Dr. Taylor in 1988. The record is unclear but somehow she arranged or there was arranged a second mammogram with defendant. It was performed on October 28, 1988 and states, in part:

> Bissell, Mary C.
> Taylor, W.A.
> **MAMMOGRAM:** Both breasts have been examined in multiple projections. No dominant nodule, cluster of microcalcifications or skin thickening is demonstrated. Both breasts do demonstrate moderate fibrocystic change. There has been no significant change since the previous study of 11/5/87.
> **IMPRESSION: BILATERAL FIBROCYSTIC CHANGE. TWF:** dal

As seen, the report itself does not indicate the presence or suspicion of cancer. As part of his amended complaint, however, plaintiff alleges that this second mammogram was misread, but if read properly, it reveals the presence of cancer.

Dr. Taylor next saw Bissell on June 5, 1989. Her visit was for another general physical examination and because of a complaint concerning her left breast. Her husband had apparently accidentally struck her there with a golf club. Dr. Taylor's examination revealed a lump on Bissell's left breast. He believed it was due to the golf club incident and told Bissell he did not believe it to be cancerous. Dr. Taylor ordered Bissell's annual mammogram be taken then. The record indicates that he ordered it then because he believed she would be away in the Fall of 1989. The defendant's test was on June 13, 1989, and it read, in part:

> Bissell, Mary C.
> Taylor, W.A.
> **MAMMOGRAM:** Both breasts were examined in multiple projections and comparison made with the previous study dated 10/22/88. There is a definite interval change of the upper outer quadrant of the left breast. The parenchyma of this area is distorted and there is an area of ill-defined increased density with spiculated margins. There are several clustered suspicious calcifications seen at this area. The combination of these findings is highly suspicious for interval infiltrative carcinoma of the upper outer quadrant of the left breast. There is minimal fibrocystic change and ductal hyperplasia of the right breast. There is no skin thickening or nipple retraction. No microcalcifications of the right breast are present. Mammogram of the right breast is stable and unchanged since the previous study.
> **IMPRESSION: INTERVAL PARENCHYSMAL [sic] CHANGES SEEN AT THE UPPER OUTER QUADRANT OF THE LEFT BREAST WITH SUSPICIOUS MICRO-CALCIFICATIONS. RULE OUT CARCINOMA OF THE LEFT BREAST. MAMMOGRAM OF THE RIGHT BREAST IS UNCHANGED. MM/lm**

As noted, this report was "highly suspicious" of cancer. Bissell was never told of these findings. The record is disputed whether Bissell called Dr. Taylor about the mammogram and if she did, what may have been said about it, except that it is undisputed that he did not mention the findings

of cancer. Contrary to his normal practice, Dr. Taylor did not call Bissell into his office to discuss the cancer finding and suggest a surgeon's follow-up.[1]

Bissell next saw Dr. Taylor on October 19, 1989 but not for any complaints involving her breast. She was diagnosed with breast cancer in February 1990 and died of it on June 6, 1991. This action was filed on June 13, 1991.

### CLAIMS

Plaintiff contends that he has adequately pled continuous negligent treatment. He argues that defendant's motion raises genuine issues of material fact making summary judgment inappropriate. Further, plaintiff says, his amended complaint relates back to the original complaint. Finally, plaintiff contends that the statute of limitations did not start to run on June 5, 1989 when Bissell saw Dr. Taylor.

In support of his claim, plaintiff has supplied two affidavits. The first affidavit from Dr. Robert Kurtz [Dr. Kurtz] was submitted with plaintiff's original motion to amend. Dr. Kurtz is a radiologist and worked for defendant from 1973 to 1987. Dr. Kurtz opines that the applicable standard of care dictated that the first sign of cancer should have been detected in the 1988 mammogram and that the standard of care was violated when this was not done. Dr. Kurtz goes on to state that the applicable standard of care required the defendant, after reading the 1989 mammogram as suspicious of cancer, to inform the treating physician of the examination results. Plaintiff says that by not doing so, the defendant violated the standard of care.

In addition, Dr. Kurtz states that the applicable standard of care mandated that the defendant reinterpret the 1987 mammogram in 1988 and the 1988 mammogram in 1989. He notes that the 1988 and 1989 mammograms were compared. He indicates that the 1988 mammogram was not correctly interpreted again in 1989. Dr. Kurtz claims the interval cancer noted in

1989 actually occurred between 1987 and 1988. It is Dr. Kurtz's opinion that the 1987, 1988 and 1989 mammograms constitute continuing care as to early detection of breast cancer.

As part of his response to the defendant's motion, plaintiff offers the additional affidavit of Dr. Gerald Edelstein [Dr. Edelstein], a practicing radiologist. Dr. Edelstein, too, opines the correct standard of care was to interpret the 1988 mammogram as showing interval cancer arising since the 1987 mammogram. Such interpretation would have lead to recommendations to the referring physician, his physical examination and a probable biopsy. The 1988 mammographer should have contacted Dr. Taylor about the correct findings. None of this occurred.

Dr. Edelstein also says the 1989 radiologist should have contacted the referring doctor regarding the findings. The failure to do so constitutes a deviation from the applicable standard of care. Also, the standard of care required defendant to compare the 1988 and 1989 mammograms, and as Dr. Edelstein sees it, correctly interpret the 1988 mammogram when read again.

Dr. Edelstein joins Dr. Kurtz in opining there was continuing medical care. Dr. Edelstein mentions that various groups have promoted annual mammograms for women over 50 years of age for purposes of early detection of breast cancer.

The defendant counters plaintiff's claims by arguing that plaintiff's amended complaint is barred by the statute of limitations because it does not relate back to the original complaint. According to defendant, the original complaint lacked notice of the allegation of a misinterpretation of the 1988 examination.

Defendant further argues that the two-year statute of limitations bars plaintiff's action because Bissell's June 5, 1989 visit to Dr. Taylor was an independent consultation making the last alleged act of negligent treatment by defendant, if any, on

---

1. Plaintiff has brought a separate, still-pending action against Dr. Taylor, alleging failure to read and act on the 1989 report.

October 28, 1988. Since this action was filed in 1991, more than two years have elapsed.

In addition, defendant argues that there was not a continuum of negligent medical treatment. It argues the mammograms were discrete and complete each time. It also attacks Dr. Kurtz as a disgruntled former employee. Defendant argues that Dr. Kurtz's (and presumably Dr. Edelstein's) statements that there was continuous medical treatment states a legal conclusion and, thus, it moves to strike them.

In these respects, some of the claims and defenses raise issues of first impression.

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim upon which relief can be granted made pursuant to Superior Court Rule 12(b)(6) will not be granted if plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint. *Spence v. Funk*, Del. Supr., 396 A.2d 967 (1978). In considering this motion, all well-pleaded allegations in the complaint must be accepted as true. *American Ins. Co. v. Material Transit, Inc.*, Del.Super., 446 A.2d 1101 (1982).

Summary judgment may be granted only if, on undisputed facts, the moving party demonstrates that he is entitled to judgment as a matter of law. *Merrill v. Crothall–American, Inc.*, Del.Supr., 606 A.2d 96 (1992). The court must consider the facts stated in a light most favorable to the non-moving party. *Alabi v. DHL Airways, Inc.*, Del.Super., 583 A.2d 1358 (1990). Thus, if it appears that there is any reasonable hypothesis by which the non-moving party might recover, the motion for summary judgment will be denied. *Vanaman v. Milford Memorial Hospital, Inc.*, Del. Supr., 272 A.2d 718, 720 (1970).

When a defendant in a medical malpractice case moves for summary judgment, he must support his motion with expert medical testimony showing the relevant medical standards followed by physicians in good standing in the community under like circumstances and that his conduct was in conformity with these standards. *Ogden v. Gallagher*, Del.Supr., 591 A.2d 215, 222 (1991). He must do this before the burden shifts to the non-moving party. *Suarez v. Wilmington Medical Center, Inc.*, Del.Super., 526 A.2d 574, 576 (1987); *Suarez v. Wilmington Medical Center, Inc.*, Del.Super., 533 A.2d 1249, 1250 (1987).

Defendant has supplied no affidavits in support of his motion. He cites cases as authority that the defendant's mammograms were discrete, separate and not continuous.

## STATUTE OF LIMITATIONS

### A

In medical malpractice actions, Delaware recognizes a two-year statute of limitations.[2] No one in the case argues that the three-year provision is applicable. Plaintiff's action was filed two years to the day from the date of defendant's last mammogram. In and of itself, plaintiff's original action is timely. The issue is whether his amended complaint is timely.

In *Ewing v. Beck*, Del.Supr., 520 A.2d 653 (1987), the court stated that when the cause of action is for continuous negligent treatment, as here, the statute "begins to run for two years from the last act in the negligent continuum *prior* to the point in time when the plaintiff has actual knowledge of the negligent course of treatment or in the exercise of reasonable diligence could have discovered the negligent course

2. No action for the recovery of damages upon a claim against a health care provider for personal injury, including personal injury which results in death, arising out of malpractice shall be brought after the expiration of 2 years from the date upon which such injury occurred; provided, however, that:
(1) Solely in the event of personal injury the occurrence of which, during such period of 2 years, was unknown to and could not in the exercise of reasonable diligence have been discovered by the injured person, such action may be brought prior to the expiration of 3 years from the date upon which such injury occurred, and not thereafter;
18 *Del.C.* § 6856.

of treatment." *Id.* at 663 [Emphasis in original]. *Ewing* also adopted the reasonably prudent person test in determining whether a patient (or plaintiff) had knowledge. *Id.* at 664.

Where a plaintiff has sufficiently pled a continuous negligent treatment action, the inquiry is from what point the statute of limitations begins to run. *Ogden,* 591 A.2d at 219. Defendant argues that Bissell's visit with Dr. Taylor on June 5, 1989, since it, in part, concerned the condition of her left breast, was the independent consultation or second opinion contemplated in *Ewing.* Thus, defendant argues, the last act prior to June 5, 1989 was the alleged misreading of the October 1988 mammogram. Since this action was not filed until June 13, 1991, defendant contends it is barred.

### B

■ The issue then is whether Bissell's visit with Dr. Taylor qualifies as an independent consultation which acts to start the two-year clock on the statute of limitations as of October 28, 1988. There is no evidence in the record in this case that there is an employer-employee partnership or other relationship between Dr. Taylor and defendant that would make them non-independent or interrelated entities, except for the referral for diagnostic testing.

The record is clear that Dr. Taylor referred Bissell to defendant for diagnostic testing, *i.e.,* mammograms. The record shows that defendant's reports in 1987, 1988 and 1989 were not sent to Bissell but to Dr. Taylor. He was her attending physician and primary health care provider. Defendant performed supportive tests in this case.

Dr. Taylor referred Bissell to defendant for more refined testing than palpation, however refined that might be. The affidavits which plaintiff has supplied indicate the standard applicable here is for defendant to have communicated its test results to Dr. Taylor who would, in turn, presumably discuss them with Bissell. Defendant has not supplied affidavits of any kind contradicting this standard. In that sense, defendant's motion is unsupported by the requisite affidavit(s). *Ogden,* 591 A.2d at 221.

Since this later statement may be perceived as an invitation to supply such an affidavit, the Court would consider such a filing as evidencing there is a genuine issue of material fact making summary judgment impossible. Further, it is not factually disputed that the diagnostic reports were sent to Dr. Taylor, not Bissell.

This Court must now go through a several-stage analysis:

> The *Ewing* rule requires a two-part inquiry: (1) what is the date upon which the plaintiff had actual or constructive knowledge of the negligent course of treatment and; [sic] (2) what is the date of the "last act" in the negligent continuum immediately prior to the date that the patient received knowledge, actual or constructive, of the negligent course of treatment.

*Benge v. Davis,* Del.Supr., 553 A.2d 1180, 1184 (1989). The *Ewing* court also created a presumption:

> that a patient who actually consults with an independent health care provider about the same condition which is subsequently the subject matter of an alleged negligent medical continuum knew or in the exercise of reasonable diligence could have known about the prior negligent course of conduct on date of the consultation with the independent health care provider. If a patient receives independent medical advice from a skilled health care provider in the form of a second opinion or consultation, that patient has a duty of inquiry not only about his condition but about his prior course of medical treatment.

*Ewing,* 520 A.2d at 664.

On the strength of this language alone, Bissell's diagnostic tests with defendant were not consultations with an independent health care provider as contemplated by the *Ewing* language and the facts of this case. There is no evidence that defendant offers or offered "independent medical advice" since its findings are to be communicated to the treating physician *albeit,* one

unaffiliated with it.[3] Further, the diagnostic testing in this case was not the kind of second opinion which sets off the reverse trigger. Dr. Taylor clearly desired a diagnostic test be performed in 1989 (and previously) of which there is no record he performs on his own or that he equates to palpation for early detection of breast cancer.

The facts in *Ewing* illustrate the type of independent treatment or consultation which sets off the reverse trigger of looking back to the date of the original provider's last treatment. The initial treating physician referred the decedent in *Ewing* to a *treating* radiologist for treatment of bladder and prostate cancer. That physician, in turn, informed the decedent of a prior condition which set off the reverse trigger against the first provider.

The radiologist in *Ewing* was not acting in the same capacity as the diagnostic radiologist in this case. Bissell was not seeing defendant for treatment but as part of a complete diagnostic approach under the aegis of Dr. Taylor.

In *Benge*, the plaintiff patient consulted the first physician, Benge, in connection with a dull ache in her left breast. For a period of ten months, she was diagnosed as not having cancer. Benge last treated plaintiff on October 8, 1984. On October 11, 1984 she saw two separate physicians, both, as far as can be determined, were independent of each other and Benge. They told her she had cancer and treatment was recommended. Plaintiff filed her action on October 10, 1986. The court held that the statute started to run as of October 8, 1984 because of the independent consultations or second opinions. Again, the role of the two physicians there differs from the diagnostic testing which formed a basis of Dr. Taylor's treatment of Bissell.

The issue of whether Benge's treatment over ten months leading up to the last visit on October 8, 1984 constituted continuous negligent treatment was never raised. Obviously, it has to be assumed that his treatment met the Supreme Court's definition of continuous negligent treatment.

The recent opinion of *Ogden* again illustrates the nature of the second opinion or consultation which operates to put the patient (plaintiff) on notice under *Ewing's* first test. The original treating physician and the second opinion physician were both orthopedists. The court in *Ogden* rejected the argument that the second physician was not independent because the first doctor had referred him to that second physician.

Dr. Taylor referred Bissell to defendant because he wanted a diagnostic test as part of *his* treatment. Thus, assuming for the moment, the proper allegation of continuous negligent treatment by defendant, the issue is whether Bissell's visit with Dr. Taylor on June 5, 1989 created the reverse trigger to October 1988, thus, making this lawsuit untimely. Prior to that visit, Bissell had had no discussions with any physician or anyone in defendant's operation regarding any difficulties or complaints with her left breast. Defendant's 1988 report on its face indicates no problem.

There is no evidence that prior to her complaint on June 5, 1989, Bissell had any symptoms in her left breast other than the after affect of being accidentally struck by the golf club. Under these circumstances using the *Ewing* objective reasonable person test and adding in the presumption, there can be no indication Bissell knew or should have known of a cancerous condition on June 5, 1989. At a minimum, there is a genuine issue of material fact whether the record in this case shows Bissell knew or should have known on June 5, 1989 of a cancerous condition in her left breast. If she did, of course, the second *Ewing* test makes it clear that the operative last act was the mammogram in October 1988.

Therefore, since as a matter of law or as a matter of disputed material fact Bissell did not know and could not know of a breast cancer condition on June 5, 1989, the operable last act in the defendant's continuing negligent treatment is June 13, 1989.

---

**3.** This does not mean, of course, that defendant is treated as incapable of committing an *independent act* of malpractice for which it can be held liable.

Consequently, under the second *Ewing* test this action is not time barred.

## SUFFICIENCY OF ALLEGATION OF CONTINUOUS NEGLIGENT TREATMENT

■ Up to this point, the assumption has been made that plaintiff has sufficiently alleged continuing negligent treatment by defendant. Delaware law recognizes a cause of action for continuous negligent medical treatment. *Ewing*, 520 A.2d at 664. This has been defined to be "[w]hen there is a continuum of negligent medical care related to *a single condition* occasioned by negligence, the plaintiff has but one cause of action." *Id.* at 662 [emphasis in original]. The plaintiff's complaint for this cause of action "must allege with particularity a continuous course of negligent medical treatment over a finite period of time". *Ogden*, 591 A.2d at 219 [citations omitted].

The fact patterns of the leading Delaware malpractice cases of *Ewing*, *Benge* and *Ogden* do not provide much precedential value to this case. The *Ewing* case involved a series of tests, misread, as alleged here. However, the tests in *Ewing* were performed as part of treatment or detection of a *known* problem or symptom. Instead, the tests here were designed, according to the complaint, to provide a series of benchmarks either for interpretation of that test alone or as alleged here to provide continuing benchmarks to measure changes in the intervals between the tests. There was no known or suspected problem when the testing started in 1987, again unlike *Ewing*.

■ The test comparison point is illustrated by that portion of the 1989 mammogram which refers back to the 1988 test to indicate the presence of suspicious matter not found in 1988. According to the complaint, the primary reason for periodic re-peated mammograms is to assist in the *early* diagnosis of breast cancer. Thus, the allegations and affidavits show there is a single medical condition—breast cancer detection. There are no affidavits to the contrary.[4] *Baylis v. Wilmington Medical Center, Inc.*, Del.Supr., 477 A.2d 1051, 1057 (1984).

The second element is whether there has been an sufficient showing of continuous *negligent* treatment. The Court is satisfied that such a showing has been made. In the absence of contrary affidavits, plaintiff's affidavits alone, at a minimum, create a genuine issue of material fact.

First, the allegations in the amended complaint, supported by affidavits, show the following. The first test was taken in 1987 and the second in 1988. The 1988 report indicates that the 1988 mammogram was compared to the 1987 mammogram. This shows the need for benchmark testing in a routine, ongoing diagnostic situation in order to have a basis of comparison.

Second, the 1989 test report also refers to the rereading of the 1988 mammogram. As Dr. Edelstein says, one purpose, as shown by the report itself, is to detect if cancer has appeared in the interval between the latest mammogram and the most recent prior one. Therefore, the test reports themselves establish a continuum. The affidavits confirm that the standard requires rereading the most recent prior mammogram as part of the interpretative process for the latest mammogram.

The allegation—supported by two affidavits—is that the 1988 mammogram was misinterpreted when originally read. In addition, when reread in 1989, according to plaintiff, it was misinterpreted again. Thus, there are two negligent acts relating to one condition in a finite period of time. There are no contrary affidavits.

---

4. Defendant attacks Dr. Kurtz's affidavit as being the product of a disgruntled former employee of defendant. Defendant asks this Court to do something on a motion to dismiss and/or for summary judgment which it cannot do. That is, defendant assails Dr. Kurtz's credibility but this Court cannot determine the degree of his lack of credibility, if any, in this procedural context. Defendant's argument is moot because Dr. Edelstein's affidavit makes the same points. Defendant also argues that Dr. Kurtz's affidavit states conclusions. This Court disagrees. D.R.E. 704. Accordingly, defendant's motion to strike is denied.

Insomuch as defendant's motion is to dismiss the complaint because the mammograms were segmented, discrete and separate, all well-pled allegations must be accepted as true. *Kershaw Excavating Co. v. City Systems, Inc.*, Del.Supr., 581 A.2d 1111, 1114 (1990). Even with the obvious admonition creating a higher standard in malpractice cases in *Ogden* and *Ewing* that the complaint must allege with "particularity" continuous negligent treatment over a finite period of time, plaintiff's complaint passes muster.

■ If defendant's motion is for summary judgment on the issue of continuing negligent treatment, it must be denied. It argues that this Court can determine as a matter of law that it was not continuous. The cases of *Ewing, Benge* and *Ogden* did not address the precise test of the appropriateness of summary judgment on a complaint of this nature. In *Benge*, for instance, the court noted the facts were not in dispute. *Benge*, 553 A.2d at 1185.

In one sense, the facts in this case are not in dispute. That is, all agree three tests were performed and the reports say what they say. However, what *is* in dispute is whether the tests are separate and discrete as defendant claims or a continuum of negligent treatment as plaintiff claims.

New York case law provides some guidance. Guidance is the operative word because New York has the cause of action known as continuous course of treatment. *Borgia v. City of New York*, N.Y.C.A., 12 N.Y.2d 151, 237 N.Y.S.2d 319, 187 N.E.2d 777 (1962). Accrual of the cause of action comes at the end of treatment whether negligent or not. *Id.*, 237 N.Y.S.2d at 320, 187 N.E.2d at 778. In rejecting continuous negligent treatment as the cause of action in New York, the court said:

> Little argument is needed to prove the proposition that the "continuous treatment" theory is the fairer one. It would be absurd to require a wronged patient to interrupt corrective efforts by serving a summons on the physician or hospital superintendent or by filing notice of claim. . . .

*Borgia*, 237 N.Y.S.2d at 321, 187 N.E.2d at 779. Delaware specifically rejected this rationale when our Supreme Court, in finding that only a cause of action for continuous negligent treatment would lie, stated:

> To hold otherwise, would permit the patient that has or should have knowledge of a negligent course of medical treatment to extend the statute of limitations by extending the period of treatment after the negligent course of treatment was or should have been known.

*Ewing*, 520 A.2d at 663.

While, therefore, Delaware has rejected the rationale of the Court of Appeals of New York, there is ample, appropriate authority from New York on the issue of whether summary judgment is available to defendant at this point.

Defendant argues that the 1989 mammogram was performed because of the golf club injury but there is evidence in the record that the 1989 mammogram was scheduled for June that year rather than in October (the prior two tests being performed in the Fall) because Bissell planned to be out of town during the Fall of 1989. The record reflects that the 1989 mammogram—whether or not done for the golf club injury alone—was still compared to the 1988 test.

Bissell was tested by defendant three times in two years. Each test required not only its own analyses but a comparison to the last prior test. The tests are designed to (1) establish a benchmark and (2) provide a basis for ongoing comparison. Defendant argues they were each discrete and separate. Whether the 1988 and 1989 tests were discrete or part of a continuum of negligent treatment is a fact question incapable of resolution on a summary judgment motion. *Weinberg v. Gibstein*, E.D.N.Y. 756 F.Supp. 101, 104 (1991) (containing citations to numerous New York decisions indicating whether a patient's repeated visits represent a factual question of whether they constituted a continuous course of treatment).

The case of *Fonda v. Paulsen*, N.Y.Supr., 46 A.D.2d 540, 363 N.Y.S.2d 841

(1975) involved a patient whose biopsies were read by an independent pathologist on two occasions thirty-two months apart.

Moreover, we are of the opinion that to hold [defendant pathologist] as having "treated" plaintiff only at the times of his biopsy diagnoses is to take a view of the case which is analogous to the outworn theories under which privity of contract was required before liability could ensue. The nature of a pathologist's work is such that he rarely, if ever, has a direct physician-patient relationship with an individual—in other words, he never treats patients in the conventional sense—but his work is often the basis upon which the nature of subsequent treatments to be given by the attending physician is determined. Such is what appears to have occurred in the case at bar. In the somewhat unique circumstances presented in the case at bar, where the pathologist should have reasonably expected that his work would be relied on by other practitioners in determining the mode of treatment, we feel it appropriate to impute to that pathologist or diagnostician constructive participation in that treatment so long as it continued. In this way, the practitioner guilty of the initial malpractice is subject to the same period of limitations as those who continued the malpractice as a reasonably foreseeable result of the initial wrong. Of course, there may have come a point where continuation of a course of treatment was negligent in and of itself irrespective of the original erroneous diagnosis; at that point, the diagnostician's constructive continuance in the treatment would have ceased. But the determination of such a question is one of fact based upon medical evidence which can only be decided by the jury.
*Id.*, 363 N.Y.S.2d at 846.

Accordingly, defendant's motion for summary judgment, since it raises a genuine issue of material fact on the question of whether the mammograms are discrete negligent acts or a continuous negligent act, must be denied.

## *RELATION BACK OF AMENDMENT*

Plaintiff's original complaint alleged malpractice against defendant, only as a result of defendant's failure to inform Bissell of the 1989 cancer findings.

■ Amendments under Rule 15(a) are to be freely given. *Annone v. Kawasaki Motor Corp.*, Del.Supr., 316 A.2d 209, 211 (1974). However, such liberality must be tempered by the requirements of Rule 15(c)[5]. *Mergenthaler, Inc. v. Jefferson*, Del.Supr., 332 A.2d 396, 398 (1975). The amendment must relate back. *DiFonzo v. Robelen Piano Co.*, Del.Super., 144 A.2d 247, 248 (1958). The determinative factor in relating back is whether a defendant "should have had notice from the original pleadings that the plaintiff's new claim might be asserted against him." *Atlantis Plastics Corp. v. Sammons*, Del.Ch., 558 A.2d 1062, 1065 (1989).

■ Under the terms of Rule 15(c), "any claim ... asserted in a proposed amendment relates back only if it arose out of the conduct stated in the original pleading." *Mergenthaler*, 332 A.2d at 398. The original complaint attached the 1989 mammogram. As noted, *supra* at 857, the recorded analysis of the test referred to a rereading of the 1988 mammogram. That, in turn, apparently helped lead to the diagnosis for an "interval" form of cancer. As such, defendant was on notice that the 1988

---

**5.** Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment, that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.
Superior Court Civil Rule 15(c).

mammogram was a necessary baseline for the 1989 test. Plaintiff's original complaint also alleged diagnosis of left breast cancer in February 1990.

As noted, Delaware recognizes that a malpractice plaintiff has only one cause of action, that being continuous negligent treatment, not a cause of action for each act. *Ewing*, 520 A.2d at 661. Thus, alleging continuous negligent treatment does not change the underlying cause of action.

The Court concludes that the amendment is proper under Rule 15(c).

### CONCLUSION

For the reasons set forth herein, the Court has concluded that plaintiff Harry Bissell has adequately pled a course of action for continuous negligent treatment.

Further, the Court concludes that plaintiff's original complaint may be amended and is not barred by the statute of limitations.

Accordingly, defendant Papastavros' Associates Medical Imaging's motion for judgment on the pleadings is **DENIED** and its motion for summary judgment must be **DENIED.** Defendant Papastavros' Associates Medical Imaging's motion to strike Dr. Kurtz's affidavit is **DENIED.**