JAMES O. SMITH, Plaintiff-Appellant, v. COOK COUNTY HOSPITAL et al., Defendants-Appellees.

First District (1st Division)   No. 87—0507

Opinion filed December 14, 1987.

858

Goldberg & Goldberg and David A. Novoselsky & Associates, both of Chicago (Michael J. Radtke, David A. Novoselsky, and Kathleen M. Krist, of counsel), for appellant.

Baker & McKenzie and Brinton & Bollinger, both of Chicago (Francis D. Morrissey, Donald J. Brown, Jr., John C. Filosa, Luke L. Dauchot, and John P. Hupp, of counsel), for appellees.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

On May 14, 1981, James O. Smith (Smith), the plaintiff, filed a four-count complaint for medical malpractice against the defendants board of commissioners, County of Cook (Cook County), Dr. Donald E. Hoard (Hoard), and Dr. Howard Heilbrunn (Heilbrunn), and other defendants not party to this appeal. Smith's complaint alleged medical

malpractice by the defendants for their treatment of Smith from January 1973 until June 1976. Cook County and Dr. Hoard filed motions for summary judgment, and Dr. Heilbrunn filed a section 2—619 (Ill. Rev. Stat. 1985, ch. 110, par. 2—619) motion to dismiss; all the motions were based upon a statute of limitations defense. The trial court granted the defendants' motions on January 30, 1986. Smith subsequently filed a motion to vacate which was denied on January 27, 1987.

Smith was first admitted to Cook County Hospital on January 21, 1973, due to a burn on his arm. After being in Cook County Hospital about a week, he began experiencing soreness and tightness in his lower back. He stayed in Cook County's neurology department until February 23, 1973. From approximately January 8, 1973, until June 1976, plaintiff was treated at various times in Cook County Hospital and Fantus Clinic (a Cook County Hospital clinic) and was treated during this time by Drs. Hoard and Heilbrunn, Cook County Hospital employees. Allegedly, neither doctor told him the true nature of his back ailment.[1]

Smith subsequently moved to Detroit, Michigan, and began to see another doctor, Doctor Fragatos, for his ailments. Smith, at Dr. Fragatos' request, attempted to obtain his Cook County medical records. Smith made one phone call and two written requests for his records from Cook County in 1977. In 1978, after these requests went unanswered, Smith went to Cook County Hospital to try to get his records and was told by the personnel there that the records would be mailed to him. Smith then sent a letter to the United States Attorney's office in Detroit to attempt to get that office to intervene to assist him in obtaining his records. Sometime in 1979, Smith consulted an attorney regarding potential claims for malpractice.

Smith finally received his records in 1980; the cover letter which came with the records was dated January 3, 1980. Within a week after he received these records, he personally took them over to his attorney's office. Smith, on his attorney's advice, underwent a physical examination on December 22, 1980. Smith filed his suit for medical malpractice on May 14, 1981, and sent statutory notice to the defend-

---

[1]Plaintiff alleges in his complaint that defendants failed to diagnose him as having transverse myelitis, an apparent inflammation of the bone marrow, and instead misdiagnosed him as having multiple sclerosis. Up to and including the date of plaintiff's deposition, July 9, 1984, no doctor had diagnosed plaintiff's actual ailment as transverse myelitis. However, plaintiff relies upon a certain Cook County medical record for his allegations concerning his myelitis ailment, but that record was not before the trial court and is not properly before this court on review.

ants pursuant to the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) at the same time. (Ill. Rev. Stat. 1985, ch. 85, par. 8—102.) The trial court granted defendants' motion to dismiss and motions for summary judgment, and accordingly dismissed Smith's claim as to Dr. Heilbrunn, and entered judgment in favor of Dr. Hoard and Cook County. Smith's motion to vacate was denied, as stated previously, and Smith now appeals the order of dismissal and summary judgment to this court. We affirm.

Smith presents three issues for review: (1) whether the trial court erred when it granted the defendants' motion to dismiss and motions for summary judgment by finding that the four-year statute of limitations in section 13—212 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1985, ch. 110, par. 13—212) barred Smith's claim and that the fraudulent concealment exception in section 13—215 of the Code did not apply; (2) whether the trial court erred when it found that defendants were not equitably estopped from asserting a statute of limitations defense; and (3) whether the trial court erred when it found that statutory notice under section 8—102 of the Tort Immunity Act was not properly provided.

■ The first issue deals with whether section 13—212 of the Code of Civil Procedure was properly applied to the facts in this case. (Ill. Rev. Stat. 1985, ch. 110, par. 13—212.) Section 13—212 was amended in 1976 and currently provides that no action shall be brought against a physician or hospital for malpractice more than two years after plaintiff knew or, through the use of reasonable diligence, should have known of the injury, but in no event shall the action be brought more than four years after the date on which the injury occurred. (Ill. Rev. Stat. 1985, ch. 110, par. 13—212.)[2] Section 13—212

---

[2]Although plaintiffs have not raised the issue, it is important to note that the predecessor to section 13—212, found in section 21.1 of the Limitations Act (Ill. Rev. Stat. 1977, ch. 83, par. 22.1), was amended with an effective date of Sept. 19, 1976. That version is the same as the current section 13—212. The 1976 amendment reduced the outside time limit for filing claims from five years (Ill. Rev. Stat. 1975, ch. 83, par. 22.1) to four years. Prior to that, courts had been applying a 10-year outside limit to malpractice claims. (See *Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 37, 262 N.E.2d 450, 453.) This court will apply the current version since: (1) the lower court applied this version and plaintiff has not challenged its application, and (2) under Illinois case law, the current version of section 13—212 applies since Smith had almost the full four years left to file when the 1976 amendment became effective. See *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 402 N.E.2d 560, *appeal dismissed sub nom. Woodward v. Burnham City Hospital* (1980), 449 U.S. 807, 66 L. Ed. 2d 11, 101 S. Ct. 54. *Cf. Moore v. Jackson Park Hospital* (1983), 95 Ill. 2d 223, 447 N.E.2d 408 (*Anderson* distinguished on its facts).

has been interpreted by our supreme court to mean that a cause of action accrues when a plaintiff knows or reasonably should have known of an injury and that the injury was wrongfully caused. (*Rio v. Edward Hospital* (1984), 104 Ill. 2d 354, 361, 472 N.E.2d 421, 424.) Generally, the point in time when an injured party knows or reasonably should have known both of his injury and that it was wrongfully caused is a disputed fact question for a jury. However, where it is apparent from the undisputed facts that only one conclusion can be drawn, the question is one for the court. *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 156, 421 N.E.2d 869, 874.

■■ ■ Once the discovery date is ascertained here, it must further be determined if the exception to section 13—212 for fraudulent concealment, contained in section 13—215, applies. (See Ill. Rev. Stat. 1985, ch. 110, pars. 13—212, 13—215.) Section 13—215 states that if a defendant has "fraudulently concealed" the existence of a cause of action, the injured party has five years within which to bring suit after he discovers the cause of action. (Ill. Rev. Stat. 1985, ch. 110, par. 13—215.) The concealment contemplated in section 13—215 must consist of affirmative acts or representations which are calculated to lull or induce a claimant into delaying filing of his claim or to prevent a claimant from discovering his claim. Mere silence on the part of the defendant and failure by the claimant to learn of the cause of action are not enough. (*Zagar v. Health & Hospitals Governing Comm'n* (1980), 83 Ill. App. 3d 894, 898, 404 N.E.2d 496, 500.) Moreover, fraudulent misrepresentations which constitute the basis of the claim do not amount to fraudulent concealment unless these actions tended to conceal the cause of action. (83 Ill. App. 3d at 898, 404 N.E.2d at 500.) Finally, this exception does not apply when the party affected by the fraud might, with ordinary diligence, have discovered it. (*Greenock v. Rush Presbyterian-St. Luke's Medical Center* (1978), 65 Ill. App. 3d 266, 271, 382 N.E.2d 321, 324.) If the claimant discovers the fraudulent concealment, or should have discovered it through ordinary diligence, and a reasonable time remains within the remaining limitations period, section 13—215 will not toll the running of the limitations period. (*Real v. Kim* (1983), 112 Ill. App. 3d 427, 435, 445 N.E.2d 783, 789.) Illinois courts have found that discovery of a claim with as little as 5½ months remaining within the statute of limitations period constitutes a reasonable time within which to file a medical malpractice claim under section 13—215. (See *Brown v. Mason* (1985), 132 Ill. App. 3d 439, 477 N.E.2d 61.) While reasonableness is generally a fact question, it may be determined by a court, without a hearing on that issue, if no hearing on reasonableness is requested

and if it is clear that a reasonable time did in fact remain within the statute of limitations. See *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 402 N.E.2d 560, *appeal dismissed sub nom. Woodward v. Burnham City Hospital* (1980), 449 U.S. 807, 66 L. Ed. 2d 11, 101 S. Ct. 54.

Here, under section 13—212, the outside time limit was four years from the date of the last injury. The latest date that Smith could file under section 13—212 would be June 1980, or four years after his last treatment. Smith claims that he first actually discovered his claim on December 22, 1980, the date he saw a physician at his attorney's request. He further alleges that there was fraudulent concealment here, as recognized under section 13—215, and that the reasonable diligence exception does not apply since Illinois law also recognizes a fiduciary relationship exception to the reasonable diligence exception. In support of this contention, Smith cites cases involving trustee-beneficiary relationships. (See, *e.g., Prueter v. Bork* (1981), 105 Ill. App. 3d 1003, 435 N.E.2d 109.) Smith argues that Cook County's failure to deliver his records and the doctors' failure to diagnose his ailment also constituted affirmative acts of fraudulent concealment. Moreover, he claims that since the doctors here occupied a fiduciary relationship with him, citing *Prueter* as authority for a fiduciary relationship exception to the reasonable diligence requirement, the date of Smith's actual discovery of the cause of action on December 22, 1980, was the date from which the statute of limitations began to run, regardless of the fact that he may have had a reasonable time left within which to file when he received his medical records.

We disagree. In this case, the last date of the alleged injury was June 1976. Regardless of the discovery date, the claim had to have been filed under section 13—212 by June 1980. (See *Mega v. Holy Cross Hospital* (1986), 111 Ill. 2d 416, 490 N.E.2d 665.) Smith here had ongoing pain since January or February 1973 and had also been consulting an attorney regarding potential claims since 1979. We cannot agree with Smith's contention that he did not discover his injury and claim until December 22, 1980, almost a year after he had received all his medical records from Cook County, which he had immediately delivered to his attorney, who received them on or about January 3, 1980. Moreover, we do not agree with Smith's contention that the date of discovery in this case must be the date on which Smith allegedly actually discovered his claim.

■ Specifically concerning the defendant Cook County (board of commissioners, County of Cook), we find that while there was arguably some evidence of fraudulent concealment, it is clear that when Smith received the records from Cook County in January 1980, he

still had approximately six months to file the claim within the section 13—212 limit, which expired in June 1980. Indeed, when Smith received the records on or about January 3, 1980, he immediately delivered them to his attorney. No explanation is offered as to why the claim could not have been filed by June 1980. There is also nothing in the record to show that the trial court did not consider the reasonableness of Smith's actions under the statute. Six months was a reasonable time within which Smith could have filed his complaint after the alleged fraud was discovered. Accordingly, we find that Smith's claim was properly determined to be time barred as to Cook County.

▮ We also reject Smith's contention that a fiduciary duty exception existed to the requirement of reasonable diligence. The contention is unsupported by any Illinois case law involving medical malpractice claims under section 13—215. (See, *e.g., Zagar v. Health & Hospitals Governing Comm'n* (1980), 83 Ill. App. 3d 894, 404 N.E.2d 496.) A fiduciary relationship in the context of medical malpractice is a factor to be considered regarding issues of equitable estoppel. (See *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 159, 421 N.E.2d 869, 876.) However, an examination of those Illinois cases which have dealt with medical malpractice issues within a section 13—215 fraud context demonstrates that Illinois courts have not applied a fiduciary relationship exception to the requirement that an action be brought within a reasonable time after discovery, *i.e.*, whether the plaintiff knew or should have known of his injury. (See *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 421 N.E.2d 869; *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 402 N.E.2d 560; *Greenock v. Rush Presbyterian-St. Luke's Medical Center* (1978), 65 Ill. App. 3d 266, 382 N.E.2d 321.) The cases cited by Smith are not medical malpractice cases, but trustee-beneficiary cases and, as such, are inapplicable to the case at bar. Since no alleged fiduciary relationship exception applies in this case, it therefore follows that the discovery of the fraud under section 13—215 does not require actual knowledge of the claim to begin the statute running.

▮ In relation to the claims against Drs. Hoard and Heilbrunn, Smith argues that because they treated him and failed to diagnose his ailment, their failure amounted to fraudulent concealment. Smith relies on a certain Cook County medical record, that he received on or about January 3, 1980, which he has attached as an appendix to his brief. However, this record does not mention either Dr. Hoard or Dr. Heilbrunn, but merely lists Smith's diagnosis as myelitis. We find this unpersuasive and disagree with Smith's contention, and, as discussed below, find that this alleged failure to diagnose could not, in any

event, under these circumstances constitute fraudulent concealment.

Smith's argument concerning Drs. Hoard and Heilbrunn is without merit. The medical record on which Smith relies, as noted before, was not before the trial court, did not list the names of either Dr. Hoard or Dr. Heilbrunn, and was received by Smith on or about January 3, 1980. Accordingly, that medical record cannot be considered by this court, and even if we were to consider it, the fact remains that Smith received the record in a sufficient amount of time within which he could have filed his action against Drs. Hoard and Heilbrunn before section 13—212 would have barred his action. Hence, without this record or any other evidence of fraudulent concealment, Smith can only rely upon the failure of the doctors to diagnose his ailment as the basis for his claim of fraudulent concealment. The failure to diagnose (which is, in actuality, mere silence on the part of the doctors) does not amount to fraudulent concealment under section 13—215. Moreover, since the failure to diagnose is the heart of Smith's medical malpractice claim, this cannot constitute fraudulent concealment unless Smith can also show that the doctors' silence actually concealed his discovery of his injury. This, of course, is not the situation presented here, because Smith was suffering continual back and leg pain. (See *Zagar v. Health & Hospitals Governing Comm'n* (1980), 83 Ill. App. 3d 894, 404 N.E.2d 496.) We find that there was no fraudulent concealment on the part of Drs. Hoard and Heilbrunn and, therefore, the limitations period set forth in section 13—212 applied, making the latest possible date Smith could have filed his claim to be in June of 1980. However, Smith filed his claim in May 1981, and, thus, his claim was time barred as to all three defendants.

The second issue presented by the plaintiff is whether the defendants were equitably estopped from asserting a statute of limitations defense. If a claim is legally time barred, the only other way for plaintiff to avoid that bar is to show that the defendant is precluded from asserting a legal time-bar defense based on some theory of equity. Equitable estoppel is a theory which precludes a litigant from denying prior assertions in cases where it would be unjust to permit the litigant to disavow express and implied statements upon which another party has relied and which have caused him to forgo filing his suit. (*Real v. Kim* (1983), 112 Ill. App. 3d 427, 434, 445 N.E.2d 783, 788.) Basically, the theory provides that a defendant cannot benefit from his own misconduct. However, the plaintiff cannot show mere misconduct, but must be able to show that the defendant said or did something to lull or induce the plaintiff to delay the filing of his claim until after the limitations period has run. (*Real v. Kim* (1983), 112 Ill.

App. 3d 427, 445 N.E.2d 783.) Moreover, the doctrine of equitable estoppel will not apply to a case if the defendant's conduct terminated within ample time to allow the plaintiff to still avail himself of any legal rights he may have had. The court, in determining whether the doctrine of equitable estoppel is applicable to the case, will, of course, consider whether a fiduciary relationship such as a doctor-patient relationship existed between plaintiff and defendant. (*Witherell v. Weimer* (1981), 85 Ill. 2d 146, 421 N.E.2d 869.) However, whether or not the doctrine is applicable will depend on the particular facts of each case and not merely on the nature of the relationship of the parties.

■■■ Smith argues here that, even though the period of time in which he was induced to forgo filing suit ended with reasonable time left within which he could have filed his action, the defendants should, nevertheless, be equitably estopped from asserting the limitations statute. The defendants are equitably estopped from asserting a statute of limitations defense, Smith contends, because of the fiduciary relationship here between plaintiff and defendants. We disagree. As we stated earlier, there is no specific fiduciary relationship exception in medical malpractice cases recognized in Illinois law. Under *Witherell v. Weimer*, evidence of a fiduciary relationship merely lends support to plaintiff's case of equitable estoppel, but it does not create an exception to the rule that requires filing of a claim within the statute of limitations if the estoppel period ends within a reasonable time before the statute of limitations runs out.

■■■ The facts here establish that none of the defendants are estopped from asserting a statute of limitations defense. First, this court finds that the alleged actions of the defendants, in failing to provide records and in failing to diagnose, which allegedly lulled or induced Smith into not filing suit, were not the type of affirmative actions which would equitably estop defendants. Second, any possible lulling or inducement on the part of Cook County expired, in any event, when Smith received his records on or about January 3, 1980, which left Smith approximately six months within which to file his actions under the limitations period provided in section 13—212. Furthermore, any failure of Drs. Hoard and Heilbrunn to tell plaintiff of his condition ended in June 1976, when their treatment of him ceased and he obtained other medical care. This, again, left Smith four years within which to file under the limitations period of section 13—212. Accordingly, we find that none of the defendants were equitably estopped from asserting the statute of limitations as a defense under the circumstances presented here.

The final issue raised by Smith is whether the trial court erred in

finding that statutory notice was not properly given under section 8—102 of the Tort Immunity Act. (Ill. Rev. Stat. 1985, ch. 85, par. 8—102.) However, this issue is now mooted by our resolution above that Smith's claims are, in any event, both legally and equitably time barred.

For all of the foregoing reasons, we find that the plaintiff's claim is time barred, and therefore affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

O'CONNOR and MANNING, JJ., concur.