**Betty J. McCLENDON, Appellant,**

v.

**David BECK, Edwin Crowell, and North Iowa Mercy Health Center, a Delaware Corporation, Appellees.**

**No. 96–164.**

Supreme Court of Iowa.

Sept. 17, 1997.

Rehearing Denied Oct. 23, 1997.

Michael A. Smith of Lundy, Butler & Smith, P.C., Eldora, and John P. Whitesell of Whitesell Law Office, Iowa Falls, for appellant.

Walter C. Schroeder and Roberta M. Anderson of Schroeder & Anderson, Mason City, for appellees David Beck and North Iowa Mercy Health Center.

Thomas A. Finley and Kerry A. Finley of Finley, Alt, Smith, Scharnberg, May & Craig, P.C., Des Moines, for appellee Edwin Crowell.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, ANDREASEN, and TERNUS, JJ.

NEUMAN, Justice.

This appeal reaches us on further review from a court of appeals decision that reversed the district court's summary judgment for defendants on statute of limitations grounds. The question is whether this medical malpractice action is barred by the two-year limit of Iowa Code section 614.1(9) (1995), or whether the record made on summary judgment reveals disputed material facts bearing on fraudulent concealment or the continuous treatment doctrine. Like the district court, we find no facts in the record that would support a tolling of the limitation period. We therefore vacate the court of appeals decision and affirm the district court.

Plaintiff Betty McClendon suffers from a congenital deformity of the spine known as spondylolisthesis. She consulted physicians Edwin Crowell and David Beck, who recommended surgery. In September 1988, the two surgeons operated on her lower back. Because the fusion they hoped for did not "take," the doctors performed another operation on October 19, 1989—this time inserting plates and screws onto McClendon's spine. Immediately following this surgery, McClendon complained of extreme leg pain. According to Beck's surgery notes, the right sacral screw appeared to impinge the sciatic nerve. So on October 27, 1989, further surgery was performed to reconfigure the offending screw. McClendon's pain continued following this corrective procedure. Three days later the doctors operated yet again, this time to repair a ruptured disk and remove one of the plates.

McClendon was discharged from the hospital on November 7, 1989. Beck furnished a written discharge summary to Thomas Graham, McClendon's family physician. Beck explained the problems encountered in the previous operations but concluded McClendon was "doing well" and predicted that "she will have a good outcome."

McClendon's back problems persisted. Some ten months later, on August 23, 1990, Beck and Crowell performed a fifth operation to remove scar tissue, the other plate, and a broken screw. McClendon, still suffering back and leg pain, had a postoperative visit with Beck in December 1990. Beck ruled out any more surgery and advised her "that the pain would get better as time went on." McClendon's family physician continued to prescribe medicine for pain.

McClendon did not consult either Beck or Crowell in 1991 or 1992. Not until May 3, 1993, upon her request for a referral from Graham, did McClendon pursue a "follow-up" visit with Beck concerning her ongoing back and leg pain. Beck reported the substance of this visit to Graham in the following letter:

Betty McClendon returned today for a follow-up. As you know, she has had

chronic pain in the right leg and back. Betty continues to be miserable. She is taking Percocet every three hours. Again, I discussed things with Betty. I really think the only way to get Betty out of pain is something like a morphine installation pump. I don't think a dorsal column stimulator or any other pain procedure would help. I have given her a videotape on this. She is going to call me in a week. I have also started her on a Medrol Dose–Pak to see if an epidural steroid would help.

On June 27, 1994, McClendon filed a medical malpractice action against physicians Crowell and Beck, and North Iowa Mercy Health Center. She alleged negligent performance of the surgeries, and negligent preoperative and postoperative treatment. McClendon sought punitive as well as compensatory damages, alleging the defendants willfully and wantonly disregarded her rights and safety by intentionally withholding information about the use of plates and screws in the operation.

Defendants filed general denials and asserted the affirmative defense that Iowa Code section 614.1(9) bars her cause of action. They moved for summary judgment, asserting that because McClendon's surgeries and follow-up care occurred in 1988, 1989, and 1990, her claim filed in June 1994 was time barred.

McClendon resisted the motion on two grounds. She claimed the suit was not time barred because (1) the defendants fraudulently concealed her true condition, and (2) she remained in defendants' continuous care and was unaware until consulting with Beck in May 1993 that her condition would not improve.

The district court found no support for McClendon's arguments in the record made in response to defendants' motion. Given the series of problematic surgeries and McClen-

don's acute awareness that neither her discomfort nor the limitation in her mobility had abated, the court concluded a reasonable person would have known by late 1990, if not before, that a problem existed. Nor was the court persuaded that the optimism revealed by Beck's 1989 letter constituted fraudulent concealment. In the court's words, "[t]here was nothing in the letter that would cause Ms. McClendon in the exercise of reasonable diligence to ignore the observations of her own physical senses ... [or] dissuade her from obtaining other opinions...." It is from this ruling that McClendon appeals.

## I. Scope of Review.

 Defendants contend the record establishes their statute of limitations defense as a matter of law. They carry the burden and are entitled to prevail only if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file demonstrate that "there is no genuine issue as to any material fact" that would prevent summary judgment in their favor. Iowa R. Civ. P. 237(c). We afford the plaintiff, who opposes the motion, every reasonable inference the facts will bear. *Langner v. Simpson*, 533 N.W.2d 511, 516 (Iowa 1995). But summary judgment is properly granted if the only controversy concerns the legal consequences flowing from undisputed facts. *Teleconnect Co. v. U.S. West Communications, Inc.*, 508 N.W.2d 644, 646 (Iowa 1993).

## II. Analysis.

McClendon relies heavily on two factual claims to overcome the two-year time bar of Iowa Code section 614.1(9).[1] First, she asserts "Dr. Beck and Dr. Crowell set the course of treatment during the period of 1988 through and including May of 1993. It was at the May 1993 meeting with Dr. Beck that [she] was informed of her true condition."

---

1. Section 614.1(9) states:

 *Malpractice.* Those founded on injuries to the person or wrongful death against any physician and surgeon ... or a hospital licensed under chapter 135B, arising out of patient care, *within two years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of, the injury* or death for which damages are sought in the action, whichever of the dates occurs first, but in no event shall any action be brought more than six years after the date on which occurred the act or omission or occurrence alleged in the action to have been the cause of the injury or death unless a foreign object unintentionally left in the body caused the injury or death. (Emphasis added.)

Proof of this ongoing relationship, she claims, supports her reliance on the continuous treatment doctrine to toll the statute of limitations. Second, she contrasts Beck's 1989 letter (stating the surgeries "went well" and predicting "a good outcome") with his May 1993 assessment (her condition would not improve) as proof the doctors "fraudulently concealed the true nature of her condition and injuries until after the statute of limitations ran." We address the arguments in turn.

A. *Continuous treatment doctrine.* Several courts have held that when a plaintiff receives continuing care for the same injury from a negligent actor whose malpractice is at issue, the statute of limitations may be tolled until the treatment ceases. *Langner,* 533 N.W.2d at 519. Two common-sense reasons underlie the doctrine: (1) it is unreasonable to expect a patient to discover that her doctor's ongoing care is, in fact, the cause of her injury; and (2) the patient should not be expected to interrupt corrective medical treatment with a lawsuit. *Id.* at 519–20.

■ We declined to adopt the continuous treatment doctrine in *Langner* because the undisputed facts revealed the patient's knowledge of her injury and immediate termination of the doctor-patient relationship when the allegedly tortious conduct occurred. *Id.* at 520. Similar shortcomings prevent application of the doctrine here. Even assuming McClendon was not aware that a problem existed until May 1993, she points to no evidence of an ongoing treatment relationship with Beck or Crowell following her postoperative consultation with Beck in December 1990. She testified, in fact, that in order to see Beck in 1993 she sought a referral from Graham, knowing "it had been long enough that [she] needed a referral." Like the district court, we believe this record defeats, rather than supports, a claimed continuum of care. *See Curcio v. Ippolito,* 63 N.Y.2d 967, 483 N.Y.S.2d 989, 990, 473 N.E.2d 239, 240 (1984) (three-year hiatus between discharge and "return visit" to surgeon sufficient to bar plaintiff's claim); *see also Bruske v. Hille,* 567 N.W.2d 872, 877 (S.D.1997) (application of doctrine requires "on-going, continuous, developing and depen-

dent relationship"). The district court committed no error by refusing to afford McClendon the benefit of the continuous treatment doctrine.

■ B. *Fraudulent concealment.* The ultimate question, for purposes of avoiding the bar of section 614.1(9), is *when* McClendon gained knowledge of her injury sufficient to put her on inquiry notice to investigate further. *Langner,* 533 N.W.2d at 518; *see Van Overbeke v. Youberg,* 540 N.W.2d 273, 275 (Iowa 1995) (describing section 614.1(9) as a statutory "discovery" rule for malpractice actions). McClendon claims that Beck and Crowell concealed the true nature of her condition, thereby tolling the limitation statute. We are convinced that even the most favorable reading of the record, however, does not support her claim.

■ The common-law doctrine of fraudulent concealment provides:

> [W]here the party against whom a cause of action existed in favor of another, by fraud or actual fraudulent concealment prevented such other from obtaining knowledge thereof, the statute would only commence to run from the time the right of action was discovered, or might, by the use of diligence, have been discovered.

*Koppes v. Pearson,* 384 N.W.2d 381, 386 (Iowa 1986) (quoting *District Township v. French,* 40 Iowa 601, 603 (1875)). Applied to a modern medical malpractice action, the plaintiff carries the burden of either (1) proving "that the defendant affirmatively concealed the facts on which the plaintiff would predicate [the] cause of action," or (2) proving "a confidential or fiduciary relationship exists between the person concealing the cause of action and the aggrieved party" combined with proof that defendant breached the duty of disclosure. *Id.; Langner,* 533 N.W.2d at 522. The alleged acts of concealment must be "independent of the alleged act ruled on to establish liability." *Van Overbeke,* 540 N.W.2d at 276; *Cole v. Hartford Accident & Indem. Co.,* 242 Iowa 416, 428–29, 46 N.W.2d 811, 818 (1951).

The only "evidence" of fraud tendered by McClendon in resistance to the motion for summary judgment was Beck's hopeful prog-

nosis following the fourth surgery, and his advice in December 1990 to "giv[e] it some time," that "a lot of times pain just tends to get better." McClendon does not dispute that, despite this prognosis, she endured constant pain and enjoyed no improvement following her surgeries in 1988, 1989, and 1990. And yet she waited until 1994 to sue the defendants.

There is nothing in the summary judgment record to support McClendon's assertion that Beck or Crowell attempted to hide facts material to her cause of action. *See Langner,* 533 N.W.2d at 522. The district court correctly concluded that the constant pain experienced by McClendon following the operations was sufficient to put her on notice of the injury she belatedly claims. *See Schnebly v. Baker,* 217 N.W.2d 708, 722 (Iowa 1974) ("a person cannot claim concealment, of course, if he has knowledge"); *Smith v. Cook County Hosp.,* 164 Ill.App.3d 857, 115 Ill.Dec. 811, 817, 518 N.E.2d 336, 342 (1987) (plaintiff suffering continuing back and leg pain cannot successfully claim doctor's silence concealed injury); *Bruske,* 567 N.W.2d at 880 (plaintiff on notice jaw implant failed to correct condition "when her jaw continued to present problems"). The defendants were entitled to judgment as a matter of law.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**