SHEILA TURNER, as Special Adm'r of the Estate of Lura Nelson, Deceased, Plaintiff-Appellant, v. PRABHAVTHI G. NAMA, Defendant-Appellee.

First District (2nd Division)   No. 1—96—3317

Opinion filed December 30, 1997.

Thomas R. Cirignani & Associates, of Chicago (Deborah A. Heller and William A. Cirignani, of counsel), for appellant.

Baker & McKenzie, of Chicago (Michael A. Pollard, Michael J. Wagner, and David G. Wix, of counsel), for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

The estate of Lura Nelson, plaintiff, filed this medical malpractice claim against Prabhavthi G. Nama, defendant, alleging that defendant failed to notify decedent that her Pap smear tested positive for carcinoma. The trial court granted defendant's motion to dismiss on the basis that plaintiff's complaint was not filed within the statute of repose period set forth in section 13—212(a) of the Limitations Act (735 ILCS 5/13—212(a) (West 1996)) and denied plaintiff leave to file an amended complaint. We affirm the circuit court and find that: (1) section 13—212(a) does not violate the Illinois Constitution; (2) plaintiff failed to allege sufficient facts to establish the fraudulent concealment exception to the repose period, and even assuming sufficient facts were alleged, the exception did not apply because decedent should have discovered the alleged concealment with ample time to file an action; (3) the failure to notify did not constitute an ongoing course of negligent medical treatment to establish a later date on which the repose period would begin; and (4) plaintiff's complaint is time-barred because defendant's failure to notify, which is the act or omission triggering the running of the statute of repose, occurred more than four years before plaintiff's filing date.

## I. FACTS

Since the trial court determined that both complaints failed to allege a timely cause of action, we first review the original complaint and then discuss the differences in the proposed amended complaint.

The original complaint, filed on April 20, 1995, alleges survival and wrongful death claims based on medical malpractice. In 1982, decedent began seeing defendant, who specializes in obstetrics and gynecology. On September 18, 1990, defendant performed a Pap smear test. Sometime after September 25, 1990, plaintiff avers that defendant received decedent's Pap smear results, which indicated a class four carcinoma in situ.

On December 14, 1993, after being diagnosed with cervical cancer by another physician, decedent returned to defendant for a second opinion. Plaintiff alleges it was at this visit that defendant first told decedent of the results from the September 1990 test. Plaintiff alleges that decedent suffered a stroke on January 31, 1995, and that this caused decedent to be under legal disability from that date until she died from progressive metastatic cervical cancer on March 16, 1995.

Claiming that decedent was under defendant's care from 1982 until December 1993, plaintiff alleges that defendant had a continuing duty to ensure that decedent was notified of the test results. According to the complaint, defendant breached this duty by failing to notify decedent of the results from September 18, 1990, to December 1993 by telephone or by means that would confirm receipt, such as but not limited to registered letter or telegram with signature. Plaintiff attached to the complaint an unverified letter from an expert opining that such duty continued for at least a year and that defendant's attempts to contact the decedent and her relatives should have been carefully documented. Finally, defendant's failure to notify was the proximate cause of decedent developing progressive metastatic cervical cancer, which ultimately caused decedent's death.

Plaintiff's proposed amended complaint developed the above claim of malpractice, but also included an additional count alleging equitable estoppel. Unlike in the original complaint, plaintiff asserts in the amended complaint that although defendant's records reflect that defendant sent a letter to decedent regarding the abnormal test results on September 18, 1990, decedent did not learn of the letter until December 14, 1993, when defendant informed decedent that a letter was sent. According to the complaint, defendant was negligent in failing to follow up after the letter to ensure that decedent knew of the Pap smear results, in failing to ensure that decedent was informed of the results from November 1, 1990, and continuing every month and a half until May 1991, in failing to attempt to contact decedent by the same means listed above, and in failing to contact decedent when decedent did not return for either a six-month or yearly check-up.

Alternatively, plaintiff alleges equitable estoppel in the proposed amended complaint which, on appeal, is characterized as fraudulent concealment pursuant to section 13—215 of the Limitations Act (735 ILCS 5/13—215 (West 1996)). Here, plaintiff alters the facts, asserting that defendant never attempted to notify plaintiff of the Pap smear results. Plaintiff further alleges that defendant intentionally and fraudulently misrepresented to decedent that a letter concerning

the results was sent and that this allegedly lulled plaintiff to believe that defendant was not negligent for failing to notify. Consequently, plaintiff claims that this misrepresentation caused decedent not to file within the statute of repose.

The circuit court granted defendant's motion to dismiss pursuant to section 2—619(a)(5) of the Illinois Code of Civil Procedure (735 ILCS 5/2—619(a)(5) (West 1996)), finding that plaintiff did not file her action within the medical malpractice statute of repose (735 ILCS 5/13—212 (West 1996)).

## II. ANALYSIS

■ Because the circuit court dismissed plaintiff's complaint for being time-barred as a matter of law, we review the circuit court's order *de novo* (*Weidman v. Wilkie*, 277 Ill. App. 3d 448, 456 (1995)) and accept as true all well-pleaded facts in plaintiff's complaint and draw all reasonable inferences in favor of plaintiff (*Corluka v. Bridgford Foods of Illinois, Inc.*, 284 Ill. App. 3d 190, 192 (1996)).

## A. SECTION 13—212 OF THE LIMITATIONS ACT

■ Medical malpractice actions in Illinois must be filed within the statute of limitation periods mandated in section 13—212(a) of the Limitations Act (735 ILCS 5/13—212(a) (West 1996)). Commenting on the function of statutes of limitations, the United States Supreme Court has stated:

> "Statutes of limitation find their justification in necessity and convenience rather than logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. *** They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the avoidable and unavoidable delay." *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 314, 89 L. Ed. 2d 1628, 1635, 65 S. Ct. 1137, 1142 (1945).

Section 13—212(a) is bifurcated, providing both a statute of limitations and a statute of repose. Providing the statute of limitations and incorporating the "discovery rule," the first part of section 13—212(a) states that "no action for damages for injury or death against any [physician], *** arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, *** of the existence of the injury or death for which damages are sought." 735 ILCS 5/13—212(a) (West 1996). Our supreme court has explained that under the "discovery rule," the statute of limitations in medical mal-

practice actions begins "to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Witherell v. Weimer*, 85 Ill. 2d 146, 156 (1981).

The focus in this case, however, is the repose period. The second part of section 13—212(a) provides that "in no event shall [a medical malpractice] action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death." 735 ILCS 5/13—212(a) (West 1996). Thus, the distinction between the repose period and the limitations period is that the repose period is triggered by defendant's wrongful act or omission that causes the injury, whereas the limitations period is triggered by the patient's discovery of the injury. *Cunningham v. Huffman*, 154 Ill. 2d 398, 406 (1993). Moreover, the period of repose effectuates a different policy than the period of limitations; "it is intended to terminate the possibility of liability after a defined period of time, regardless of a potential plaintiff's lack of knowledge of his cause of action." *Mega v. Holy Cross Hospital*, 111 Ill. 2d 416, 422 (1986). Although the statute of repose causes harsh consequences in some cases, the legislature intended "to curtail the 'long tail' exposure to medical malpractice claims brought about by the advent of the discovery rule" (*Cunningham*, 154 Ill. 2d at 406) "by placing an outer time limit within which a malpractice action must be commenced" (*Anderson v. Wagner*, 79 Ill. 2d 295, 312 (1979)).

## B. THE STATUTE OF REPOSE IS CONSTITUTIONAL PURSUANT TO THE ILLINOIS CONSTITUTION

■ Plaintiff on appeal argues that section 13—212, which requires actions to be filed within four years of when the wrong occurred, is unconstitutional pursuant to article I, section 12, of the Illinois Constitution (Ill. Const. 1970, art. I, § 12). Specifically, plaintiff argues that the repose period eliminates those cases where a cause of action for failure to diagnose or treat in a timely manner would not be apparent until the disease progressed to a more detectable stage, at which time the repose period would have elapsed.

This argument, however, has been waived because plaintiff failed to raise it at the trial level. *Doe v. Lutz*, 253 Ill. App. 3d 59, 66 (1993) (finding that plaintiff's constitutional challenge was waived for failing to raise it at the trial level); *Ruffino v. Hinze*, 181 Ill. App. 3d 827, 832 (1989) (finding that appellant waived its constitutional argument for failure to raise it in the pleadings at the trial level). See also *Brazas v. Ramsey*, 291 Ill. App. 3d 104, 111 (1997) (asserting that

plaintiff's constitutional argument was waived for failure to raise it at the trial level).

Moreover, assuming waiver did not occur, our supreme court has repeatedly found that section 13—212 does not violate the Illinois Constitution. In *Mega v. Holy Cross Hospital*, the supreme court responded to the same argument that plaintiff raises here and held that section 13—212 was constitutional. *Mega v. Holy Cross Hospital*, 111 Ill. 2d 416, 428 (1986). The court asserted that although section 13—212 "restricts the time within which an action must be brought, *** it does not eliminate an entire category or type of action. That the repose provision may, in a particular instance, bar an action before it is discovered is an accidental rather than necessary consequence." *Mega*, 111 Ill. 2d at 424. Therefore, considering that the supreme court has already refuted the same argument plaintiff advances here, plaintiff's constitutional challenge of section 13—212 is without merit.

## C. PLAINTIFF'S FRAUDULENT CONCEALMENT COUNT

■ In the proposed amended complaint, plaintiff alleges that defendant concealed this cause of action, thus tolling the statute of repose. Plaintiff alleges equitable estoppel while citing to the fraudulent concealment statute, section 13—215 of the Limitations Act (735 ILCS 5/13—215 (West 1996)). Although case law developed the doctrine of equitable estoppel and the legislature promulgated fraudulent concealment, the principles behind the two are substantively the same. Compare *Smith v. Cook County Hospital*, 164 Ill. App. 3d 857, 862 (1987) (asserting that to allege fraudulent concealment plaintiff must show "affirmative acts or representations which are calculated to lull or induce a claimant into delaying filing of his claim or to prevent a claimant from discovering his claim"), with *Wolf v. Bueser*, 279 Ill. App. 3d 217, 228 (1996) (asserting that to allege equitable estoppel, "[a]s with fraudulent concealment, plaintiff must show that defendant said or did something to lull or induce plaintiff to delay the filing of his claim until after the limitations period had run"). Thus, because plaintiff cites to section 13—215, we treat plaintiff's argument as being based on fraudulent concealment.

■ Section 13—215 provides:

"If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." 735 ILCS 5/13—215 (West 1996).

Accordingly, "[t]he concealment of a cause of action sufficient to toll

the statute of limitations requires affirmative acts or representations designed to prevent discovery of the cause of action or to lull or induce a claimant into delaying the filing of his claim." *Dancor International, Ltd. v. Friedman, Goldberg & Mintz*, 288 Ill. App. 3d 666, 675 (1997); see also *Wolf*, 279 Ill. App. 3d at 228; *Smith*, 164 Ill. App. 3d at 862. "Moreover, fraudulent misrepresentations which constitute the basis of the claim do not amount to fraudulent concealment unless these actions tended to conceal the cause of action." *Smith*, 164 Ill. App. 3d at 862.

Nevertheless, this court has declined to apply fraudulent concealment for the running of the statute of limitations where "the claimant discovers the fraudulent concealment, or should have discovered it through ordinary diligence, and a reasonable time remains within the remaining limitations period." *Smith*, 164 Ill. App. 3d at 862; compare *Smith*, 164 Ill. App. 3d at 866 (asserting that "equitable estoppel will not apply to a case if the defendant's conduct terminated within ample time to allow the plaintiff to still avail himself of any legal rights he may have had"). In such case, "the inducement for delay has ceased to operate sufficiently before the expiration of the limitation period so as to afford the plaintiff[ ] ample time within such period" to file its action. *Sabath v. Mansfield*, 60 Ill. App. 3d 1008, 1014 (1978); see also *Anderson v. Wagner*, 79 Ill. 2d 295, 322 (1979) (asserting that "[i]f at the time the plaintiff discovers the 'fraudulent concealment' a reasonable time remains within the applicable statute of limitations, [section 13—215] of the Limitations Act does not toll the running of the limitations period").

■ Plaintiff alleges that, on December 14, 1993, defendant first informed decedent that the September 1990 Pap smear indicated cancer and that defendant misrepresented to decedent that a letter was sent regarding such results. Plaintiff further alleges that this misrepresentation led decedent to believe that defendant was not negligent for failing to notify decedent of the results and that this caused decedent not to file within the statute of repose.

Initially we note that these allegations do not constitute fraudulent concealment because the allegations do not indicate that defendant's statement tended to conceal decedent's cause of action. See *Smith*, 164 Ill. App. 3d at 862. Upon being told that a letter was sent regarding the results, decedent knew either that this was a misrepresentation, because she never received such letter, or that, despite the letter being sent, defendant should have reattempted to notify her since the test indicated a serious condition, namely, cancer. In either event, decedent knew or reasonably should have known during or soon after the December 1993 visit that defendant committed malpractice.

■ For the same reasons, we conclude that through the exercise of ordinary diligence decedent discovered or reasonably should have discovered the alleged concealment of her cause of action soon after the December 14, 1993, visit. This is especially true considering that she had been diagnosed as having cancer prior to the December 1993 visit to defendant and that, after the visit, other doctors treated her cancer, giving decedent opportunities to discuss the defendant's care with another physician. *Cf. Ewing v. Beck*, 520 A.2d 653, 664 (Del. 1987) (asserting that there is a presumption that a patient who consults with an independent physician regarding the same condition discovers or should discover the defendant's negligent course of conduct and that a patient who consults with an independent physician has a duty to inquire about the prior course of medical treatment). Thus, because decedent should have discovered the concealment through ordinary diligence, and a reasonable time remained within the limitations period, the fraudulent concealment exception does not apply. See *Smith*, 164 Ill. App. 3d at 862 (asserting that if the claimant should have discovered the fraudulent concealment through due diligence and a reasonable time remains within the limitations period, the fraudulent concealment exception cannot be invoked). As such, decedent had more than eight months to file her action before the repose period elapsed in September 1994; thus, as a matter of law, decedent had ample time in which to exercise due diligence to file suit. See *Real v. Kim*, 112 Ill. App. 3d 427, 435-36 (1983) (holding that, as a matter of law, a 10-month period of time was sufficient to file suit); *Sabath v. Mansfield*, 60 Ill. App. 3d 1008, 1015 (1978) (holding that, as a matter of law, an eight-month period of time was sufficient to file suit).

## D. THE "ONGOING COURSE OF CONTINUOUS NEGLIGENT MEDICAL TREATMENT" DOCTRINE IS INAPPLICABLE

Plaintiff argues that defendant's continuing failure to notify her of the unfavorable Pap smear results was an ongoing course of continuous negligent medical treatment. As such, plaintiff contends that the date of defendant's last negligent failure to inform decedent of the test results triggered the repose period. Accordingly, plaintiff's filing date would fall within the four-year period. Thus, the issue that the court must decide is whether a physician's failure to ensure a patient knows of her unfavorable test results constitutes an ongoing course of continuous negligent medical treatment. For the reasons that follow, we conclude that the context in which the doctrine has been invoked, in addition to the policy behind the statute of repose, precludes application of the doctrine in this case.

The statute of repose, section 13—212(a) of the Limitations Act, provides that "in no event shall [a medical malpractice] action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death." 735 ILCS 5/13—212(a) (West 1996). As discussed earlier, even though the statute of repose yields harsh consequences in certain cases, the General Assembly enacted the statute of repose "to curtail the 'long tail' exposure to medical malpractice claims" that the advent of the discovery rule created. *Cunningham*, 154 Ill. 2d at 406; see also *Anderson*, 79 Ill. 2d at 312. It is purely a rule of convenience that sets an arbitrary time period in which a party must assert her action. However, results will vary depending on the statute's application.

"If the statute of repose were read to start on day one of the treatment in a span covering many years, a plaintiff could only seek recovery for the final four years." *Cunningham*, 154 Ill. 2d at 405. In this situation, one's injuries occurring within the last four years of treatment might be negligible in comparison to the cumulative results of the physician's continuous negligent treatment. *Cunningham*, 154 Ill. 2d at 405. To avoid such an unjust result, the Illinois Supreme Court adopted the "ongoing course of continuous negligent medical treatment" doctrine in *Cunningham*.

■ The doctrine is not an extension of the statute of repose, but, rather, it provides an approach in construing "act" or "omission," giving proper effect to the term "occurrence" within the statute of repose. In construing the phrase " 'the act or omission or occurrence,' [the Illinois Supreme Court found] it improbable that the General Assembly intended the word 'occurrence' to be limited to a single event." *Cunningham*, 154 Ill. 2d at 405. The court observed that if that were the case, the General Assembly simply would have stated that the statute commences on a "specific act" or a "specific omission." *Cunningham*, 154 Ill. 2d at 405. Instead, the court interpreted "occurrence" to include a string of negligent acts or omissions and, thus, concluded that the statute of repose contemplates an ongoing course of negligent medical treatment. See *Cunningham*, 154 Ill. 2d at 405-06.

Application of the doctrine allows plaintiffs to bring one action for the aggregate injury caused by the compounding effects of an ongoing course of continuous negligent medical treatment for a specific condition. See *Cunningham*, 154 Ill. 2d at 405. Consequently, the negligent medical treatment continuum begins on the defendant's first negligent medical treatment and continues until his last negligent medical treatment, at which point the repose period begins

to run. *Cunningham*, 154 Ill. 2d at 405. To properly allege an ongoing course of continuous negligent medical treatment, plaintiff must show: "(1) that there was a continuous and unbroken course of negligent treatment, and (2) that the treatment was so related as to constitute one continuing wrong." (Emphasis omitted.) *Cunningham*, 154 Ill. 2d at 406.

■ Plaintiff asserts that its allegations satisfy the above two criteria. Plaintiff argues that, because defendant had an ongoing duty to ensure that decedent was notified of her unfavorable Pap smear results, defendant's failure to do such constitutes an ongoing course of negligent treatment. Plaintiff alleges that defendant failed to ensure that decedent was informed of her unfavorable Pap smear results on November 1, 1990, and continuing every month and a half until May 1991. In addition, plaintiff alleges that defendant breached the duty to follow up with decedent when decedent neither returned for a six-month check-up nor a yearly check-up.

We disagree with plaintiff's assertion that a failure to ensure that decedent was notified of her unfavorable test results amounts to an "ongoing course of negligent medical treatment." Rather, the plain meaning of the phrase "medical treatment" and the doctrine's application in Illinois, as well as other jurisdictions, indicate that the doctrine's scope does not encompass the alleged negligent omissions set forth in plaintiff's complaint.

The plain meanings of the words "treatment" and "medical" limit the doctrine's applicability. Webster's Dictionary denotes "treatment" as "the action or manner of treating a patient medically or surgically." Webster's Third New International Dictionary 2435 (1993). Stedman's Medical Dictionary defines "treatment" as "[t]he medical or surgical management of a patient." Stedman's Medical Dictionary 1477 (24th ed. 1982). See also The American Heritage Dictionary 1290 (2d Coll. ed. 1982) (defining "treatment" as "[t]he act or manner of treating, handling"; or "[t]he application of remedies with the object of effecting a cure").

Likewise, defining "medical" is also instructive. Stedman's defines "medical" as "relating to medicine or the practice of medicine" or "medicinal." Stedman's Medical Dictionary 842 (24th ed. 1982); see also Webster's Third New International Dictionary 1402 (1993) (defining "medical" as "relating to, or concerned with physicians or with the practice of medicine"). In light of the plain meaning of the words within the doctrine, it is reasonable to conclude that "medical treatment" is an affirmative event involving application of medical expertise.

Although Illinois courts have never delineated the scope of the

doctrine, the courts have consistently applied the doctrine only to acts or omissions occurring within the context of "medical treatment." For instance, in *Cunningham* each negligent act or omission occurred within the affirmative event of treatment and involved application of medical judgment. *Cunningham*, 154 Ill. 2d at 400-01. Similarly, appellate decisions addressing the issue all involve medical treatments. *Collins v. Sullivan*, 287 Ill. App. 3d 999, 1002 (1997) (finding that the alleged negligent treatments were not continuous); *Holladay v. Boyd*, 285 Ill. App. 3d 1006, 1015 (1996) (finding that the therapy rendered by telephone was not the cause of plaintiff's injuries but, rather, plaintiff's injuries were caused by sexual contacts occurring during treatments dating back more than four years before the filing date); *Hayes v. Wilson*, 283 Ill. App. 3d 1015 (1996) (finding that the statute of repose ran where there were more than four years between the date of the last alleged negligent treatment and the filing date); *Allen v. Thorek Hospital*, 275 Ill. App. 3d 695, 702 (1995) (holding that defendants' treatments were not continuous); *Hertel v. Sullivan*, 261 Ill. App. 3d 156, 160 (1994) (refusing to expand the "ongoing course of continuous negligent medical treatment" doctrine to cases involving therapy administered by priests or ministers).

Finding little Illinois case law contemplating the specific issue raised in this case, we looked to other jurisdictions for further guidance. Although not binding on this court, we find persuasive the Delaware Supreme Court's determination of the doctrine's scope. *Ogden v. Gallagher*, 591 A.2d 215, 220 (Del. 1991). In *Ogden*, the Delaware Supreme Court defined "last act" to determine when the repose period commences in the context of an "ongoing continuous negligent medical treatment" situation. The Delaware Supreme Court first reasoned that the act "must be an affirmative happening or event." *Ogden*, 591 A.2d at 220. "However, an act of omission can be a valid basis for plaintiff's medical malpractice claim, if that act of omission occurs 'within the context of an affirmative happening or event.' " *Ogden*, 591 A.2d at 220, quoting *Benge v. Davis*, 553 A.2d 1180, 1185 n.6 (Del. 1989). The court then opined that to satisfy the doctrine the "act or omission must be a form of medical treatment and not a ministerial function." *Ogden*, 591 A.2d at 220. In *Benge v. Davis*, the court elaborated on the term "act" within the health care context, stating the term includes a variety of forms such as: "surgery; a prescription for medication [citation]; an emergency room visit [citation]; and an office visit or consultation [citation]." *Benge*, 553 A.2d at 1185.

In the instant case, although defendant was charged with an obligation to notify decedent of the test results, we do not believe that defendant's failure amounts to an ongoing course of continuous

negligent medical treatment. As seen above, the scope of the "ongoing course of continuous negligent medical treatment" doctrine has been construed to include only those acts or omissions that occur within the affirmative event of treatment. Here, the alleged negligence occurred subsequent to the affirmative event of treatment.

Moreover, any characterization of the obligation to notify as inherently "medical" is misplaced. Although the fulfillment of the duty is gravely important, the obligation requires only ordinary judgment—not medical judgment. The obligation was to notify decedent as soon as reasonably possible by whatever means necessary. Although such notification remains the ultimate responsibility of a physician, hospital, or other health care provider, and is within the purview of section 13—212, it is not an ongoing course of continuous negligent medical treatment.

For these reasons, we conclude that the "ongoing course of negligent medical treatment" doctrine only encompasses those acts and omissions occurring within the medical treatment context, and it does not include the alleged failure to notify decedent of her unfavorable test results. Therefore, we decline to expand the doctrine in this case.

### E. THE TRIGGERING OF THE REPOSE PERIOD

Although the "ongoing course of negligent medical treatment" doctrine does not apply to this case, we nevertheless must decide when the statute of repose was triggered by determining when defendant's act or omission causing decedent's injury occurred. See 735 ILCS 5/13—212(a) (West 1996). Plaintiff first argues that decedent's stroke placed a legal disability on her and that this shortened the period between the filing date and the day the statute of repose ran. However, because the stroke occurred subsequent to when the cause of action accrued, plaintiff's argument is without merit. See 735 ILCS 5/13—212(c) (West 1996) (providing that "[i]f the person entitled to bring an action described in this Section is, *at the time the cause of action accrued,* under a legal disability \*\*\*, then the period of limitations does not begin to run until the disability is removed" (emphasis added)). Thus, because plaintiff filed its complaint on April 20, 1995, defendant's failure to notify must have occurred on or after April 20, 1991, for plaintiff's filing date to fall within the repose period.

Plaintiff alleges that defendant's failure to notify began on November 1, 1990, and continued every month and a half until May 1991. In addition, plaintiff avers that defendant failed to notify decedent of the results when decedent neither returned for a six-

month check-up nor a yearly check-up. Moreover, in its brief, plaintiff argued that the obligation continued until defendant successfully notified decedent of the results. Despite these assertions, we find as a matter·of law that defendant's failure to notify triggered the statute of repose no later than late November 1990.

Once a health care provider receives unfavorable test results it is obligated to timely inform the patient of the results. If the provider is a physician, the physician can delegate this task or do it herself. Nonetheless, the obligation is imposed and continues until the provider exhausts all reasonable means available, including but not limited to letter, telephone, or correspondence that would indicate receipt.

Considering the obligation that defendant is charged with, defendant should and could have satisfied the obligation to notify within at the very most a two-month period. When defendant received the results in late September, defendant should have exhausted as soon as possible all reasonable means to notify the decedent of the results. This could have included mailing one or two letters, phoning the decedent and her relatives, and sending a letter by certified mail. We therefore conclude that defendant's omission giving rise to the injury occurred no later than at the end of a two-month period in which defendant could have and should have but failed to notify decedent of the unfavorable results. Consequently, plaintiff's filing date remains more than four months beyond the running of the statute of repose.

Although an obligation to notify might continue, to conclude that an omission of notification reoccurs into perpetuity would contravene the General Assembly's intent behind promulgating the statute of repose. Although the statute of repose creates harsh results in some cases, our role is to give effect to the statute in question—no matter the result. See *Real v. Kim*, 112 Ill. App. 3d 427, 431 (1983). The four-year outer limit of the statute of repose was designed and enacted specifically "to curtail the 'long tail' exposure to medical malpractice claims brought about by the advent of the discovery rule" and "to terminate the possibility of liability after a defined period of time." *Cunningham*, 154 Ill. 2d at 406. At present, the statute of repose is only excepted by fraudulent concealment and postponed by an ongoing course of continuous negligent medical treatment. Finding that neither of these applied to the allegations in this case, we therefore conclude that the trial court properly dismissed plaintiff's action for being barred by the statute of repose.

## CONCLUSION

For the reasons discussed above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNULTY, P.J., and TULLY, J., concur.